EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Martín J. Mejías Ortiz<br><br>Recurrido | Certiorari<br><br>2003 TSPR 124<br><br>159 DPR ____ |

Número del Caso: CC-2003-205

Fecha: 18 de julio de 2003

Tribunal de Circuito de Apelaciones:
          Circuito Regional I

Juez Ponente:
          Hon. Dolores Rodríguez de Oronoz

Abogado de la Parte Recurrida:
          Lcdo. Jorge Gordon Menéndez

Oficina del Procurador General:
          Lcda. Eva Samantha Soto Castelló
          Procuradora General Auxiliar

Materia: Asesinato y Ley de Armas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.

                            CC-2003-205

Martín J. Mejías Ortiz

    Recurrido

Opinión del Tribunal emitida por la Jueza Asociada señora NAVEIRA DE RODÓN

San Juan, Puerto Rico a 18 de julio de 2003

En el recurso de epígrafe nos corresponde determinar si la identificación del acusado mediante fotografías tiene suficientes garantías de confiabilidad, de manera que sea admisible en evidencia.

I

El Ministerio Público radicó varias acusaciones contra el Sr. Martín J. Mejías Ortiz, imputándole la comisión de asesinato en primer grado, Art. 83 Código Penal, 33 L.P.R.A. sec. 4002, y violaciones a

los Arts. 4.04, 4.07 y 4.15 de la Ley de Armas, Ley Núm. 404 de 11 de septiembre de 2000, según enmendada, 25 L.P.R.A. secs. 458c, 458f y 458n. El principal testigo de cargo fue el Sr. José L. Colón Rodríguez, hermano del occiso, quien identificó al acusado mediante fotografías. El juicio fue señalado para el 13 de junio de 2002.

El 31 de mayo de 2002 el acusado radicó una moción solicitando la supresión de la identificación. En la misma alegó que el procedimiento mediante el cual se llevó a cabo carecía de confiabilidad y que fue sugestivo. El Tribunal de Primera Instancia ordenó la celebración de una vista.[1] La defensa presentó como testigos a los Sres. Sergio De Jesús Torres, Gadiel Rosado Pérez y José L. Colón Rodríguez. Examinemos el procedimiento conducente a la identificación del acusado, según surge de la prueba testifical.

El señor Colón Rodríguez, hermano del occiso, relató que el 17 de febrero de 2002, aproximadamente a las cinco de la madrugada (5:00 a.m.), se encontraba comprando alimentos en una guagua de ventas ambulantes llamada "Mi sueño". Para entonces había claridad en el lugar donde fue cometido el delito. De repente, escuchó unas detonaciones que provenían de su lado derecho. Luego escuchó a una persona decir "[e]se es el hermano, tírale, tírale, tírale". El testigo volteó a la derecha

---

[1] Ésta se llevó a cabo los días 2, 3 y 5 de diciembre de 2000.

y observó a un hombre armado, al que no conocía anteriormente, quien le indicó que no se moviera. Luego de observarlo por un período de dos (2) a siete (7) segundos, comenzó a correr en dirección contraria a donde se encontraba la persona armada. El día de los hechos no fue entrevistado por la policía. Cuatro (4) días después, el 21 de febrero, fue citado para una entrevista con el agente Gadiel Rosado Pérez. En la entrevista describió al agresor como una persona de aproximadamente cinco (5) pies y diez (10) pulgadas de estatura, entre tez blanca y trigueña, con barba escasa y bigote (estilo "candado") y con el cabello corto. Señaló que el agresor estaba vestido con una camisa blanca y aseguró que no recordaba el pantalón que llevaba puesto. Manifestó al agente Rosado Pérez que durante el funeral de su hermano le habían dicho que el asesino se llamaba Martín John.

Luego de la entrevista el agente Rosado Pérez le presentó nueve (9) fotografías para que indicara si alguna de las personas era el asesino de su hermano. El señor Colón Rodríguez inmediatamente señaló al hombre en la fotografía número cuatro (4) como el agresor, quien aparecía con barba y bigote prácticamente imperceptibles. El testigo manifestó, además, que durante la identificación nadie le sugirió que entre las fotografías se encontraba la del acusado.

El sargento Sergio De Jesús Torres estuvo a cargo de la investigación en la escena del crimen. Manifestó que al llegar al lugar de los hechos entrevistó a un amigo del occiso que lo estaba acompañando, el Sr. Edgar Vargas Álvarez. Éste describió al agresor como "una persona joven, delgada, trigueña", con una estatura de cinco (5) pies o cinco (5) pies y nueve (9) pulgadas.[2] El sargento De Jesús Torres preparó un "bosquejo preliminar con recolección del crimen" donde anotó todos los datos sobre lo ocurrido, sin embargo, no incluyó la descripción que le dieron del agresor. Indicó que anotó la descripción en una libreta y que entregó la hoja de papel al supervisor de turno.

De otra parte, en la vista se presentó el testimonio del agente Gadiel Rosado Pérez, quien estuvo a cargo de la investigación. Declaró que entrevistó al señor Vargas Álvarez, amigo de la víctima, pero éste no ofreció una descripción del acusado. Además, señaló que citó al señor Colón Rodríguez para entrevistarlo y éste le manifestó que el asesino era un hombre "delgado[o], no muy oscuro, con bigote y chiva escasa y pelo corto",[3] que medía entre cinco (5) pies y seis (6) pulgadas y cinco (5) pies y ocho (8) pulgadas y que en el funeral le indicaron que se llamaba Martín John. Con el

---

[2] Transcripción de la vista de supresión de identificación, 3 de diciembre de 2002, pág. 6.

[3] *Id.*, 5 de diciembre de 2002, pág. 15.

beneficio de la descripción, procedió a buscar unas fotografías, en ausencia del testigo, para que identificara al alegado agresor. Optó por utilizar el referido procedimiento de identificación ya que buscó al acusado en su residencia con la intención de llevar a cabo una rueda de detenidos, pero no fue posible localizarlo. Por otro lado, indicó que desconocía que el acusado tenía pendiente otro juicio en su contra en el Centro Judicial de San Juan y que se enteró de tal circunstancia posteriormente.

Para llevar a cabo la identificación el agente Rosado Pérez utilizó fotografías generadas por computadora de acuerdo con los rasgos físicos que surgieron de la descripción y que más se parecían al sospechoso. Indicó que la persona que aparecía en la fotografía número uno (1) tenía barba y bigote (estilo "candado"); seis (6) de las personas solamente tenían bigote; la persona que aparecía en la fotografía número nueve (9) no tenía bigote; y el número cuatro (4) donde aparecía el acusado, tenía barba y bigote "bien bajito", casi imperceptible. El agente Rosado Pérez indicó que el señor Colón Rodríguez inmediatamente identificó la persona en la fotografía número cuatro (4), como el asesino de su hermano. Aunque levantó un acta sobre la identificación, testificó que no incluyó en ésta la descripción provista por el señor Colón Rodríguez ya que "esa información iba a ser parte de la declaración

jurada que iba a prestar el testigo en la Fiscalía, posterior a la identificación".[4]

Luego de la identificación mediante fotografías, el agente Rosado Pérez continuó las gestiones para localizar al sospechoso. Tras varias diligencias del sargento Lili, supervisor del testigo, el acusado llegó al Cuartel General acompañado de su abogada, la licenciada Hoffmann. Ésta manifestó al agente Rosado Pérez y a su supervisor que el acusado no participaría en la rueda de detenidos, indicándolo en un acta bajo su firma.

Luego de recibir la prueba relacionada con la confiabilidad de la identificación, mediante Resolución de 6 de diciembre de 2002, el Tribunal de Primera Instancia ordenó su supresión al encontrar que "no [hubo] evidencia escrita alguna en la etapa investigativa de que haya habido identificación o descripción física previa al comentario en la funeraria de parte de un desconocido". El 13 de febrero de 2003 el Ministerio Público presentó un recurso de *certiorari* ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) alegando que el foro de instancia incidió al suprimir la identificación. El foro apelativo emitió sentencia confirmando la determinación del tribunal de instancia.

---

[4]   *Id.*, pág. 14.

Inconforme, el Ministerio Público acudió ante nos mediante recurso de *certiorari* aduciendo que el Tribunal de Circuito erró al resolver que la identificación del acusado carece de garantías de confiabilidad. Mediante Resolución de 25 de marzo de 2003 concedimos término al acusado para mostrar causa por la cual no debamos revocar la decisión emitida por el Tribunal de Circuito. El acusado no ha comparecido ante este Tribunal. No obstante, con el beneficio de la transcripción de la prueba y de los documentos que constan en autos, estamos en posición de resolver y procedemos a así hacerlo.

II

La identificación del acusado es una etapa esencial en el procedimiento criminal ya que no puede subsistir una convicción sin prueba que señale al imputado como la persona que cometió los hechos delictivos. *Pueblo v. Gómez Incera*, 97 D.P.R. 249, 251 (1969). La Regla 252 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone los procedimientos para la identificación mediante rueda de detenidos y fotografías. La mencionada Regla persigue evitar que los funcionarios del Estado a cargo de un procedimiento de identificación interfieran indebidamente con los testigos, sugiriéndoles la persona que deben identificar. *Pueblo v. Rodríguez Maysonet*, 119 D.P.R. 302, 311 (1987).

En aquellos casos donde la víctima o el testigo de la comisión de un delito no conozca personalmente al sospechoso, el procedimiento más aconsejable para la identificación es llevar a cabo una rueda de detenidos. Sin embargo, el mero hecho de que no se celebre tal procedimiento, no tiene el efecto automático de viciar o hacer inadmisible la identificación. *Pueblo v. Robledo*, 127 D.P.R. 964, 968 (1991). De acuerdo con el profesor Chiesa, "[e]l elemento de si era necesario celebrar una rueda que no se efectuó afectará más el valor probatorio que la admisibilidad de la prueba de identificación en el juicio". Ernesto L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Vol. I, Colombia, Forum, 1991, § 5.2, pág. 222.

En vista de lo anterior, es permisible una identificación mediante fotografías, siempre que no medien circunstancias que impliquen sugestión o que requieran la utilización de otros mecanismos de identificación. En *Pueblo v. Rosso Vázquez*, 105 D.P.R. 905, 908-909 (1977), señalamos que:

> **El procedimiento de identificación mediante fotografías es sostenido a menos que se trate de una situación tan crasamente sugestiva que dé lugar a una identificación errónea.** A fin de cuentas, lo importante no es el método que se utilice para la identificación del acusado, lo importante es que la identificación sea libre, espontánea y confiable. (Énfasis suplido y citas omitidas.)

La confiabilidad del procedimiento utilizado debe examinarse a la luz de las circunstancias particulares

de cada caso. *Pueblo v. Ortiz Pérez*, 123 D.P.R. 216, 223 (1989). Previamente hemos indicado que los elementos a considerar son: la oportunidad que tuvo el testigo de observar al acusado en el momento en que ocurre el acto delictivo; el grado de atención del testigo; la corrección de la descripción; el nivel de certeza en la identificación; y el tiempo transcurrido entre el crimen y la confrontación. *Pueblo v. Rodríguez Román*, 128 D.P.R. 121, 127 (1991); *Pueblo v. Peterson Pietersz*, 107 D.P.R. 172 (1977). Cuando de la totalidad de las circunstancias surja que la identificación tiene suficientes garantías de confiabilidad, ésta debe admitirse. Por otro lado, conviene señalar que es suficiente la evidencia directa de un testigo que le merezca al juzgador entero crédito para probar cualquier hecho, salvo que por ley se disponga otra cosa. Regla 10(D) de Evidencia, 32 L.P.R.A. Ap. IV. La conclusión del juzgador de hechos sobre la confiabilidad de la prueba de identificación de un acusado "tiene todo el respeto y validez que ordinariamente se extiende a las determinaciones de hechos". *Pueblo v. Ortiz Pérez*, *supra*, págs. 223-224.

Examinemos los anteriores factores para determinar si la identificación del acusado mediante fotografías tiene suficientes garantías de confiabilidad.

III

En el caso de autos el señor Colón Rodríguez, testigo presencial de los hechos, manifestó que tras escuchar unas detonaciones, miró hacia la derecha y observó al acusado. Aunque no fue entrevistado por la Policía el día del crimen, cuatro (4) días más tarde se entrevistó con el agente Rosado Pérez y describió al acusado con una estatura de cinco (5) pies y diez (10) pulgadas, aproximadamente, entre tez blanca y trigueña, pelo corto, con barba escasa y bigote (estilo "candado"). El testigo pudo ofrecer la anterior descripción ya que observó al acusado por espacio de dos (2) a siete (7) segundos y porque había claridad en el lugar donde fue cometido el delito.

Los hechos relacionados con la identificación del acusado revelan que efectivamente el testigo tuvo oportunidad de ver al acusado. El hecho de que solamente lo haya observado por varios segundos no vicia de sugestividad la identificación. En decisiones anteriores hemos admitido identificaciones donde los testigos observaron a los acusados por pocos segundos. Así, en *Pueblo v. Figueroa Torres*, *supra*, pág. 78, admitimos una identificación donde el testigo observó al agresor por unos "cuantos segundos" y en *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817, 824-825 (1983), admitimos una identificación luego de que el testigo observó al

acusado por un período de diez (10) a doce (12) segundos.

De otra parte, la prueba demuestra que aunque el testigo se puso nervioso durante el incidente, pudo fijarse bien en los rasgos físicos del acusado. Durante la vista de supresión de la identificación, la defensa trató de demostrar que el testigo corrió luego de ver al acusado porque se puso nervioso y, por ende, no lo pudo observar detenidamente. Resulta razonable considerar que la reacción normal de una persona que presencia un acto criminal como el que ocurrió en el caso ante nos, sería estar nerviosa. Sin embargo, este factor no puede viciar automáticamente una identificación sin estar presentes otros elementos que indiquen falta de confiabilidad.

En tercer lugar, la corrección de la descripción ofrecida por el señor Colón Rodríguez quedó demostrada por la correspondencia entre el testimonio, ofrecido tanto en la vista de supresión como en la vista preliminar, y los rasgos físicos del acusado. Ahora bien, en las fotografías que se le mostraron al testigo seis (6) de las personas tenían bigote; una (1) tenía barga y bigote (estilo "candado"); una (1) no tenía bigote; y el acusado aparecía con barba y bigote escasos "una lanita", de acuerdo con el testimonio del agente Rosado Pérez. El testigo identificó al acusado a pesar de aparecer en la fotografía sin la barba y bigote que

lucía el día de los hechos.  Esta discrepancia en el aspecto físico del acusado al momento de los hechos y de la confrontación no afecta la admisibilidad de la identificación, sino que constituye un factor a considerarse por el juzgador para estimar el valor probatorio del testimonio del testigo durante el juicio. *Pueblo v. Figueroa Torres*, *supra*, pág. 80.  Más aún, entendemos que la selección de las fotografías resultó beneficiosa para el acusado ya que resultaba más difícil identificarlo con un aspecto distinto al que lucía el día de los hechos.  Por otro lado, aunque al señor Colón Rodríguez le indicaron en el funeral de su hermano que el asesino se llamaba Martín John, no existe evidencia indicativa de que el agente Rosado Pérez le sugiriera al testigo que entre las fotografías se encontrara dicha persona, de manera que se viera afectada la identificación espontánea y voluntaria que hizo el testigo.

En cuarto lugar, el señor Colón Rodríguez demostró absoluta certeza al llevar a cabo la identificación.  El agente Rosado Pérez testificó que al enseñarle las fotografías al testigo, éste identificó al acusado inmediatamente.  Manifestó que "[f]ue automático.  Luego que él toma el cartón en sus manos él señala el número 4 como la persona que es".[5]  Finalmente, el procedimiento

---

[5]    *Id.*, pág. 24.

de identificación mediante fotografías se llevó a cabo trascurridos cuatro (4) días desde la comisión del delito. Este período es lo suficientemente cercano al momento de los hechos, por lo que es razonable que aún el testigo tuviera claro en su mente el recuerdo de la escena del crimen.[6]

Del anterior análisis se puede colegir que la seguridad demostrada por el testigo y la correspondencia entre las descripciones prestadas por éste tanto en la etapa investigativa como en la vista preliminar y en la vista de supresión de evidencia, hacen confiable la identificación del acusado. Aunque reconocemos la deferencia que merecen las determinaciones de hecho del Tribunal de Primera Instancia, entendemos que la identificación en el caso de autos es admisible y que corresponde al juzgador de hechos, en la celebración del juicio, adjudicar el valor probatorio que merezca la evidencia relacionada con ésta. En otras palabras, debe armonizar la prueba y analizarla en conjunto a los fines de determinar el peso que ha de concederle a ésta en su totalidad. *Pueblo v. Rodríguez Román*, *supra*, pág. 129. Establecida la confiabilidad de la identificación mediante fotografías, la utilización de dicho

---

[6] En *Pueblo v. Morales Rivera*, 112 D.P.R. 463, 469-470 (1982), sostuvimos una convicción donde la identificación del acusado se llevó a cabo a través de fotografías, transcurridos dos (2) años de los hechos delictivos. Resolvimos que la totalidad de las circunstancias no evidenciaron sugestividad en la identificación.

procedimiento debe validarse y, por tanto, los agentes del orden público no tenían que recurrir necesariamente a la celebración de una rueda de detenidos. Además, conviene tomar en consideración que luego de la identificación mediante fotografías, los agentes lograron la comparecencia del acusado y de su representación legal al Cuartel General para que se celebrara una rueda de detenidos, pero fueron estos últimos quienes se negaron a participar. En síntesis, la totalidad de las circunstancias demuestran que la identificación mediante fotografías fue correcta y confiable.

Por los fundamentos antes expuestos, expedimos el auto solicitado y revocamos las sentencias del Tribunal de Circuito y la del foro de instancia y devolvemos el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

MIRIAM NAVEIRA DE RODÓN
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        v.

                                CC-2003-205

Martín J. Mejías Ortiz

    Recurrido

SENTENCIA

San Juan, Puerto Rico a 18 de julio de 2003

Por los fundamentos expuestos en la Opinión que antecede se expide el auto solicitado y se revocan las sentencias del Tribunal de Circuito de Apelaciones y del Tribunal de Primera Instancia y se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López concurre con el resultado sin opinión escrita. El Juez Presidente señor Andréu García no intervino.

Carmen E. Cruz Rivera
Subsecretaria del Tribunal Supremo