# 2007 DTA 109

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE PONCE
PANEL X**

EL PUEBLO DE PUERTO RICO
Peticionario

v.

CHRISTIAN MORALES ARROYO, ELIZARDO GONZÁLEZ SOTO,
FÉLIX SOTO PAGÁN
Recurridos

Núm. KLCE-2007-00270

San Juan, Puerto Rico, a 7 de septiembre de 2007

Panel integrado por su Presidente, el Juez González Vargas,
y las Juezas Feliciano Acevedo y Carlos Cabrera

Carlos Cabrera, Carmen Hilda, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece el Pueblo de Puerto Rico, por conducto del Procurador General, mediante petición de *Certiorari* presentada el 28 de febrero de 2007 y solicita que se revoque una Resolución dictada el 25 de enero de 2007 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI). Mediante dicha Resolución, el TPI, luego de escuchar y aquilatar la prueba testifical y documental presentada en la vista de supresión de evidencia, suprimió la identificación de los acusados de epígrafe. ■ En concreto, se trata de la supresión de la identificación por voz del Sr. Christian Morales Arroyo y de la supresión de la identificación de los señores Elizardo González Soto y Félix Soto Pagán, mediante rueda de detenidos.

Transcurridos una serie de eventos procesales, entre los que se encuentran varias órdenes referentes a la presentación de la transcripción de la vista efectuada durante los días 22, 23 y 24 de enero de 2007, [2] ordenamos la paralización de los procedimientos el 7 de marzo de 2007, a solicitud del Pueblo de Puerto Rico, mediante Resolución de igual fecha. Luego de algunas prórrogas para completar el trámite de la presentación de la transcripción de la prueba, el 14 de mayo de 2007, el Procurador presentó su alegato suplementario. El 17 de julio, el recurrido, Christian Morales Arroyo, compareció en *Escrito en Cumplimiento de Orden*, representado por la Sociedad para la Asistencia Legal. No han comparecido los recurridos, Elizardo González Soto y Félix Soto Pagán, a pesar de que fueron requeridos a tales efectos mediante nuestra Resolución de 2 de marzo de 2007.

Estudiados los escritos de los comparecientes, evaluada la transcripción de la prueba oral estipulada y en atención al derecho aplicable, por los fundamentos que expondremos a continuación, se expide el auto y se confirma la supresión de las identificaciones de los acusados.

### I

Los hechos relevantes, en conformidad a la transcripción de la prueba que obra en el expediente, son los siguientes: En la madrugada del 1 de abril de 2003, alrededor de las cinco de la mañana, el Sr. Abner Morales Orengo se encontraba en la cocina de su residencia en el Barrio Naranjo del Municipio de Yauco en compañía de su esposa, Gladys Oliveras Pérez.

El señor Morales Orengo, quien en unión al Agente José Torres, fueron los testigos del Ministerio Público en la vista de supresión, testificó que tres individuos se presentaron en su casa. A renglón seguido declaró que *"se presentó un individuo a la puerta y cuando yo lo vi le dije, Gladys 'nos asaltaron'."* Este individuo estaba encapuchado y tenía un arma en la mano. ■ La descripción inicial que dio de éste fue que, además de estar *"encapuchado"*, tenía un pantalón gris y unos tennis blancos, que el arma se trataba de un revolver que el individuo trataba de ocultar. ■ Que el individuo le ordenó levantar las manos y le dijo *"no te muevas"* y *"lo primero que quiero, venimos a buscar tu dinero que sabemos que tienes mucho"*. ■ En ese momento vio otras dos personas que lo acompañaban, que inmediatamente entraron también. El segundo atacante portaba una escopeta negra recortada cuyas terminaciones en la culata eran de madera, mientras que el tercero portaba una

pistola 9 milímetros niquelada. El primer atacante que entró a la residencia ordenó al de la escopeta a que encañonara a la señora Oliveras Pérez. El de la pistola, por instrucciones del primero, lo encañonó también, lo tiraron al piso y entonces el primero le dijo, *"queremos una pistola que tú tienes"*, y él contestó que estaban equivocados *"porque sabían que no tenía nada"*.

El hombre que portaba la escopeta llevó a la señora Oliveras Pérez *"al cuarto de nosotros"* y él, por órdenes de los atacantes, permaneció en la sala en un sofá; *"me sientan allí y sigue buscando trae el dinero que lo trae en una bolsa de shopping"*. ■ Que esa persona entró otra vez al cuarto en busca del dinero que tenía su esposa en la cartera y el primero lo llamó porque se tardaba y le dijo *"loco avanza ya tenemos lo que queríamos que es el dinero . . . y si no avanzas no trabajas hoy"*. ■

Testificó también que le había podido ver la cara a los atacantes porque *"ellos no tenían nada en la cara, su cara estaba al descubierto"*. ■ Que el dinero al que se referían los atacantes era el dinero del café porque *"ellos eran mis empleados y sabían todas mis movidas, sabían todas mis movidas que yo había cobrado el café que había vendido de mi cosecha"*. ■ Y que cuando el atacante que acompañó a su señora a la habitación entregó el dinero lo puso a los pies del primero y *"cuando se dobla a verlos se le levanta la bufanda y ahí yo acabo de confirmar que es él"*, refiriéndose a Christian Morales, el acusado de epígrafe, porque la cara la tenía descubierta. ■

A preguntas del contrainterrogatorio, afirmó que conocía al acusado Morales desde niño. Había sido su sobrino político, porque había estado casado con su tía. Abonó al testimonio que por esas razones reconoció la voz del atacante Christian Morales Arroyo, *"imagínate si lo conozco"*. Detalló además que cuando esa persona entró por la puerta, él sabía que era Christian Morales y que *"rápidamente lo reconoció"*. ■ Ello, porque le podía ver la cara.

El señor Morales Orengo, a preguntas del Ministerio Público, asimismo identificó a los otros dos acusados de epígrafe, Elizardo González Soto y Félix Soto Pagán *"porque los había visto en la forma que los conozco perfecto. Fueron mis empleados, personas que tenían, gozaban de toda mi confianza, sabían toda mi movida"*. ■ Igualmente describió al hombre que portaba la escopeta como que era trigueño, alto y cojo, a quien identificó como Félix Soto Pagán, y al que portaba la pistola como alto y blanco, y encapuchado y se le podía ver la cara, a quien identificó como Elizardo González. ■

Por otra parte, declaró que los tres hombres procedieron a amarrarlo a él y a su esposa y se marcharon del lugar en el vehículo de ésta. La señora Oliveras Pérez logró desamarrarse antes que él y lo libró y luego contactó a las autoridades. El vehículo fue encontrado posteriormente en el Lago Luchetti.

Al mismo tiempo atestiguó que días después del incidente la policía lo citó para que participara de una rueda de detenidos y una confrontación de voces. En la vista declaró que mientras se encontraba en el cuartel, nunca vio a los declarantes. ■ Cinco personas repitieron la frase *"oye loco, vámonos que ya tenemos lo que queríamos y si no avanzas no trabaja"*. ■ Identificó positivamente a la segunda persona que resultó ser el sospechoso, el señor Morales Arroyo. Luego se llevaron a cabo dos ruedas de detenidos separadas, mediante las cuales identificó al señor Soto Pagán y al señor Elizardo González Soto como los otros dos atacantes.

A base de estas circunstancias, el Ministerio Público presentó denuncias contra los recurridos por infracción a los Artículos 173 y 173 (b) del Código Penal de 1974, 33 L.P.R.A. §§ 4279, 4279 (b), y los Artículos 5.04, 5.06 y 5.07 de la Ley de Armas del 2000, 25 L.P.R.A. §§ 458 (c), (e), (f). Luego de varios trámites procesales, entre los pertinentes, la celebración de la vista preliminar, la representación legal del señor Morales Arroyo presentó una moción para la supresión de su identificación. Alegó, en síntesis, que la identificación fue viciada porque el señor Morales Orengo no identificó a Morales Arroyo hasta luego de celebrada la confrontación de voz, aunque lo conocía desde mucho tiempo. Que la Policía le informó al señor Morales Orengo la existencia de un sospechoso

en la rueda de confrontación, identificándolo por su nombre y que resultaba curioso el hecho de que a pesar de que conocía al imputado, no lo identificara hasta el día 3 de abril de 2004, cuando la policía decide celebrar una rueda de identificación por voz.

Posteriormente, la representación legal del señor Soto Pagán y del señor González Soto se unieron a la solicitud de supresión de identificación. El Ministerio Público se opuso aduciendo a que a la luz de la totalidad de las circunstancias, la identificación de los recurridos era confiable.

Luego de adjudicar credibilidad a los testimonios brindados en la vista de supresión, el TPI emitió la Resolución que nos ocupa. Suprimió las identificaciones de los recurridos. Inconformes con dicha determinación, el Ministerio Público recurre ante nos mediante la petición de *Certiorari*. Aduce que:

*"Erró el Tribunal de Primera Instancia al suprimir las identificaciones de los recurridos de epígrafe, sin que hubiera indicios de sugestividad o de impropiedad en la celebración de las ruedas de confrontación."*

A la luz de los hechos antes expuestos, procedemos a dilucidar la controversia reseñada.

## II

Nuestro ordenamiento procesal penal es consciente de que no puede haber un juicio justo e imparcial si no se garantiza debidamente la forma de identificar a la persona que se acusa de la comisión de un delito; que la identificación del acusado es una fase esencial en el procedimiento criminal; y que los procedimientos que llevan a una identificación ocular pueden estar tan viciados que como cuestión de derecho hagan constitucionalmente inadmisible la identificación. *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817 (1983); *Pueblo Gómez Incera*, 97 D.P.R. 249 (1969).

El enfoque prevaleciente en situaciones en que la víctima conoce previamente al acusado dicta que las salvaguardas contra la sugestividad, tales como la rueda de detenidos y los requisitos establecidos en la Regla 252 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, ▊ se reduzcan a un mínimo o, dependiendo de las circunstancias, sean inaplicables e innecesarias. *Pueblo v. Mattei Torres*, 121 D.P.R. 600 (1988); *Pueblo v. Lebrón González*, 113 D.P.R. 81, 99 (1982). Más aún, si la identificación es el resultado de unas gestiones separadas e independientes de la Policía, esto es, no *"está en manos, o es dirigido o controlado por los funcionarios del Estado"*, *Pueblo v. Rodríguez Maysonet*, 119 D.P.R. 302, 310 (1987), realmente no hay problema de identificación ni puede invocarse *Pueblo Gómez Incera*, *supra*, y su casuística filial. *Pueblo v. Mattei Torres*, *supra*, pág. 608.

El procedimiento a seguirse por las autoridades en la identificación de un sospechoso con anterioridad al juicio está regulado por la Regla 252 de las de Procedimiento Criminal, *supra*, la cual rige los procedimientos sobre la llamada *"rueda de detenidos"* (line up). La Regla 252 de las de Procedimiento Criminal, *supra*, dispone los procedimientos para la identificación mediante rueda de detenidos y fotografías. Esta Regla persigue evitar que los funcionarios del Estado a cargo de un procedimiento de identificación interfieran indebidamente con los testigos, sugiriéndoles la persona que deben identificar. *Pueblo v. Rodríguez Maysonet*, *supra*, pág. 311.

El Estado puede valerse de varias formas para identificar a los sospechosos relacionados con un delito investigado. Entre ellas están la identificación mediante rueda de detenidos, fotografías y huellas dactilares. También existen métodos alternos de identificación como las muestras de sangre y la voz. Todos estos métodos, por su tangencia con algunos derechos constitucionales, tales como el de asistencia de abogado, el de no incriminarse y el de que no se viole el debido proceso de ley, han sido objeto de reglamentación estatutaria y jurisprudencial. *Pueblo v. Ramos Alvarez*, 122 D.P.R. 287 (1988). El procedimiento más confiable, sin embargo, es el reconocimiento a través de una rueda de detenidos. *Pagán Hernández v. Alcaide*, 102 D.P.R. 101, 105 (1974). Sin embargo, el mero hecho de que no se celebre tal procedimiento, no tiene el efecto automático de

viciar o hacer inadmisible la identificación. *Pueblo v. Robledo*, 127 D.P.R. 964, 968 (1991).

Así pues, en los casos en que la víctima o el testigo de la comisión de un delito no conozca personalmente al sospechoso, el procedimiento **más aconsejable para la identificación** es llevar a cabo una rueda de detenidos. Aquí, como sabemos, se celebró una rueda de confrontación por voz y una rueda de detenidos.

La norma prevaleciente para evaluar la confiabilidad de una identificación es conjugar la totalidad de las circunstancias. *Pueblo v. Mattei Torres, supra*; *Pueblo v. Rodríguez Maysonet, supra*; *Pueblo v. Rey Marrero*, 109 D.P.R. 739 (1980); *Pueblo v. Peterson Pietersz*, 107 D.P.R. 172 (1978); *Pueblo v. Gómez Incera, supra*. Esto significa que una identificación, maculada con alguna sugestividad, *per se*, no es inadmisible ni vicia la identificación positiva habida en el acto del juicio si está fundada en el conocimiento previo y recuerdo de la identidad del acusado por la víctima u otros testigos. *Pueblo v. Rey Marrero, supra*, pág. 747.

En *Pueblo v. Mejías*, 160 D.P.R. 86 (2003), siguiendo la norma establecida en *Pueblo v. Rosso Vázquez*, 105 D.P.R. 905, 908-909 (1977), se dijo, en conformidad a los hechos particulares del caso, que es permisible una identificación mediante fotografías, siempre **que no medien circunstancias que impliquen sugestión o que requieran la utilización de otros mecanismos de identificación.** Citando de *Pueblo v. Rosso Vázquez, supra*, se señaló que: *"el procedimiento de identificación mediante fotografías es sostenido a menos que se trate de una situación tan crasamente sugestiva que de lugar a una identificación errónea . . . a fin de cuentas, lo importante no es el método que se utilice para la identificación del acusado, lo importante es que la identificación sea libre, espontánea y confiable. . .".*

La confiabilidad del procedimiento utilizado debe examinarse a la luz de las circunstancias particulares de cada caso. *Pueblo v. Mejías, supra*; *Pueblo v. Ortiz Pérez*, 123 D.P.R. 216, 223 (1989). El Tribunal Supremo ha indicado que los elementos a considerar son: la oportunidad que tuvo el testigo de observar al acusado en el momento en que ocurre el acto delictivo; el grado de atención del testigo; la corrección de la descripción; el nivel de certeza en la identificación; y el tiempo transcurrido entre el crimen y la confrontación. *Pueblo v. Mejías, supra*; *Pueblo v. Rodríguez Román*, 128 D.P.R. 121, 127 (1991); *Pueblo v. Peterson Pietersz*, 107 D.P.R. 172 (1978). Bajo esos criterios, cuando de la totalidad de las circunstancias aflore que la identificación tiene suficientes garantías de confiabilidad, ésta debe admitirse. Por otro lado, conviene señalar que es suficiente la evidencia directa de un testigo que le merezca al juzgador entero crédito para probar cualquier hecho, salvo que por ley se disponga otra cosa. Regla 10 (d) de Evidencia, 32 L.P.R.A. Ap. IV.

Si la identificación del sospechoso ha sido confiable y al efectuarse no hubo irregularidades que afecten irremediablemente los derechos sustanciales del acusado, la misma es válida; de lo contrario sería nula. *Pueblo v. Torres Rivera*, 137 D.P.R. 630 (1994); *Pueblo v. Rodríguez Román, supra*; *Pueblo v. Montañez Ramos*, 100 D.P.R. 911 (1982); *Pueblo v. Peterson Pietersz, supra*; *Pueblo v. Gómez Incera, supra*. La conclusión del juzgador de los hechos sobre este punto tiene todo el respeto y validez que en apelación se extiende a las determinaciones de hechos. *Pueblo v. Suárez Sánchez*, 103 D.P.R. 10, 19, 21-22 (1974); *Pueblo v. Peterson Pietersz, supra*; *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817, 824 (1983). No obstante, aunque se reconoce la deferencia que merecen las determinaciones de hechos del Tribunal de Primera Instancia, en *Pueblo v. Mejías, supra*, a la luz de los criterios identificados anteriormente, se concluyó que la identificación en ese caso era admisible y que correspondía al juzgador de los hechos, en la celebración del juicio, adjudicar el valor probatorio que merezca la evidencia relacionada con ésta. En otras palabras, se debía armonizar la prueba y analizarla en conjunto a los fines de determinar el peso que ha de concederle a ésta en su totalidad. *Pueblo v. Rodríguez Román, supra*, pág. 129. Pero, se insiste reiteradamente, que el juzgador de los hechos está en mejor posición para adjudicar credibilidad; por lo tanto, sus determinaciones sólo se deben suplantar si no están sostenidas por la prueba. *Pueblo v. Mattei Torres, supra*, *Pueblo v. Ortiz Pérez, supra*.

Por otra parte, las contradicciones sólo ponen en juego la credibilidad; le toca al juzgador de los hechos

resolver. "*Sabido es que la máxima falsus in uno, falsus in omnibus, no autoriza rechazar toda la declaración de un testigo porque se haya contradicho o faltado a la verdad respecto a uno o mas particulares. En otras palabras, es imprescindible armonizar toda la prueba y analizarla en conjunto a los fines de arribar al peso que ha de concedérsele a la prueba en su totalidad.*" *García Rivera v. Tribunal Superior*, 86 D.P.R. 823 (1962); *Pueblo v. López Rivera*, 102 D.P.R. 359, 366 (1974).

Por otra parte, en contraste con lo apuntado, cuando la identificación del imputado de delito es realizada por la víctima o el testigo por sí sólo, esto es, sin intervención de clase alguna de funcionarios del Estado, posiblemente sea esa la identificación más espontánea y confiable que pueda darse. De hecho, como indicamos, en una situación de esta naturaleza realmente no hay problema de identificación. *Pueblo v. Rodríguez Maysonet, supra*. El elemento de si era necesario celebrar una rueda que no se efectuó, afectará más el valor probatorio que la admisibilidad de la prueba de identificación en el juicio. E.L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Colombia, Ed. Forum, 1991, Vol. I, Sección 5.2, pág. 222.

No toda anormalidad o desvío en el proceso dispuesto por la Regla 252.1, *supra*, R. 252.1, para la identificación de un acusado, acarrea la supresión de la evidencia de la identificación o la revocación de una sentencia de convicción. *Pueblo v. De Jesús Rivera, supra*; *Pueblo v. Rivera Navarro*, 113 D.P.R. 642 (1982). Lo importante para la validez de la identificación no es el método utilizado en la misma, sino que ésta sea libre, espontánea y confiable. *Pueblo v. Ramos Alvarez*, 122 D.P.R. 287, 312 (1988). Incluso, se ha sostenido la validez de la identificación en sala, aun cuando la identificación efectuada durante la etapa investigativa resultare inadmisible, **siempre que la identificación posterior no dependa ni sea producto de la sugestividad que vició la primera**. *Pueblo v. Rey Marrero, supra*.

Para que se logre una efectiva evaluación de los criterios anteriormente expuestos, es indispensable que el tribunal tenga la oportunidad de escuchar el testimonio de las personas con conocimiento personal de los hechos, de forma que pueda adjudicarle a sus testimonios la credibilidad que merezcan. Por su parte, el acusado también tiene derecho a confrontar la prueba en su contra.

Respecto a las normas prevalecientes tocantes a la función revisora, es norma reiterada en nuestro ordenamiento jurídico que la evaluación por parte de un tribunal apelativo de la prueba desfilada ante el foro de instancia tendrá ciertas limitaciones. Nuestro más Alto Foro ha sido enfático en cuanto a que los procedimientos de naturaleza penal deberán reflejar el más cuidadoso balance entre la deferencia a la evaluación y adjudicación de las determinaciones de hechos y apreciación de la prueba realizada por el juzgador y los derechos del acusado. *Pueblo v. Acevedo Estrada*, 150 D.P.R. 84 (2000).

Es principio jurídico básico, en cuanto a la revisión de cuestiones de hechos que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, un foro apelativo no ha de intervenir con la apreciación y adjudicación de credibilidad que con relación a la prueba hubiese realizado el juzgador de instancia. *Pueblo v. Acevedo Estrada, supra*; *Pueblo v. Chévere Heredia*, 139 D.P.R. 1 (1995), *Pueblo v. Pellot Pérez*, 121 D.P.R. 791, 806 (1988). Asimismo, se descartará el criterio del juzgador cuando sus determinaciones se aparten tanto de la realidad fáctica que las mismas sean inherentemente imposibles o increíbles. Dicha norma, según elaborada por el Tribunal Supremo, descansa en la presunción de que el juzgador de hechos, sea éste el juez o jurado, es a quienes se les ha delegado el deber de discernir y dirimir las controversias de hechos y quienes están en mejor posición para evaluar la prueba desfilada. Lo anterior, puesto que tuvieron la oportunidad de observar y escuchar a los testigos. Ante ello, su apreciación merece gran respeto y deferencia. *Pueblo v. Acevedo Estrada, supra*; *Pueblo v. Chévere Heredia, supra*.

En particular, el Tribunal Supremo ha establecido que toda conclusión que el juzgador de los hechos determine sobre la confiabilidad de la identificación de un acusado tiene todo el respeto y validez que ordinariamente se extiende a las determinaciones de hechos. Esto es así, ya que el juzgador de los hechos está en

mejor posición para adjudicar la credibilidad, por lo que sus determinaciones sólo se suplantarán si no están sostenidas por la prueba presentada. *Pueblo v. Rodríguez Román, supra*; *Pueblo v. Peterson, supra*.

Por último, conviene recordar que la Regla 234 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, que regula lo concerniente a la supresión de evidencia por un allanamiento o registro ilegal, y que señala el término dentro del cual debe promoverse la moción, si bien parece referirse a la prueba objetiva o material, también rige respecto a la supresión de testimonio que de resultar inadmisible, obligaría a la desestimación de los cargos y a la absolución del acusado. La Regla 234 de las de Procedimiento Criminal, *supra*, relativa a la supresión de evidencia, como regla general debe instarse oportunamente por lo menos cinco (5) días antes del juicio. *Pueblo v. Rey Marrero, supra*.

La correcta solución de una moción de supresión de evidencia que se ventile a través de la correspondiente vista, requiere que el magistrado que preside ésta dirima credibilidad. *Pueblo de Puerto Rico v. Felipe Bonilla Romero*, 120 D.P.R. 92 (1987). Una simple lectura de la Regla 234 de las de Procedimiento Criminal, *supra*, es todo lo que se necesita para concluir que el magistrado que preside una vista sobre supresión de evidencia al amparo de la citada Regla 234 efectivamente está facultado para adjudicar o dirimir credibilidad. Ello es consecuencia lógica e inescapable de los términos en que está concebida dicha disposición legal. Si el Tribunal está facultado para oir prueba sobre *"cualquier cuestión de hecho necesaria para la resolución de la solicitud"* y uno de los fundamentos para declarar con lugar la misma precisamente lo es que *"lo afirmado bajo juramento en la declaración que sirvió de base para la expedición de la orden de allanamiento es falso total o parcialmente"*, resulta obvio que el tribunal tiene el poder para adjudicar credibilidad en dicha vista. *Pueblo v. Bonilla, supra*. Se estableció allí, además, que debe quedar claro, en adición, que si bien es cierto que la citada Regla 234 aparenta referirse exclusivamente a la vista de supresión relativa a casos de allanamiento, no debe haber duda alguna que la referida norma es aplicable a toda vista de supresión que se celebre con el propósito de dilucidar la legalidad o razonabilidad de la ocupación de evidencia por parte de agentes del orden público. Adviértase que en *Pueblo v. Rey Marrero, supra*, nuestro más Alto Foro clarificó que la citada Regla 234 de Procedimiento Criminal, si bien parece referirse únicamente a prueba objetiva o material, también rige respecto a la supresión de testimonio que de resultar inadmisible obligaría a la desestimación de los cargos y la absolución del acusado.

### III

La petición de *Certiorari* que nos ocupa, por la naturaleza de sus señalamientos, ha requerido un examen integral del derecho aplicable antes apuntado y de la prueba desfilada durante la vista evidenciaria celebrada durante los días 22, 23 y 24 de enero del presente año, según transcrita y estipulada por las partes, incluyendo la prueba documental. En su petición original y en el alegato suplementario, el Ministerio Público, a través del Procurador General, se reitera en el error del TPI al suprimir las identificaciones de los recurridos de epígrafe. Insiste que no hubo indicios de sugestividad o de impropiedad en la celebración de las ruedas de confrontación (de voz y de detenidos) y que la defensa no presentó prueba para demostrar el supuesto vicio de las identificaciones de los acusados. Reclama que las identificaciones que realizó la víctima perjudicada del robo domiciliario fueron espontáneas e independientes de los acontecimientos de la rueda de confrontación, y que descansó en la información específica que le brindó a las autoridades el día de los hechos sobre los involucrados en el robo. Argumentó en específico: *"Es decir, la interrogante de si las identificaciones en el presente caso son espontáneas y consiguientemente confiables, está circunscrita a la información que Morales Orengo ofreció a la Policía previo a la confrontación post delito"*. Por otra parte, sostiene que lo anterior no significa que la rueda no pueda celebrarse, ya que con este medio de identificación se produce evidencia corroborativa de una identificación que ya había sido realizada de manera espontánea y contemporánea al delito. Afirma: *"es decir, el que se celebren procedimientos de confrontación abona a proteger los derechos constitucionales de los acusados, pues el Estado, aún siendo innecesario, se aseguró de cumplir con unos procedimientos creados para proteger los derechos de los sospechosos. O sea, las actuaciones de la policía excedieron por mucho el mínimo constitucionalmente exigible para asegurar la validez de una identificación, por lo que constituye un error de derecho la supresión de dichas confrontaciones"*.

Concluye que durante este proceso no se ha puesto en duda la confiabilidad del proceso de identificación, sino la credibilidad del testigo, y que lo que corresponde es que el juzgador de hechos adjudique el valor probatorio del testimonio sobre identificación, *"por supuesto, esa adjudicación de credibilidad es propia del juicio en su fondo y no de una vista de supresión de evidencia y que, por lo tanto, la resolución recurrida debe ser revocada"*. Resolvemos que no le asiste la razón.

Importa en este punto tener presente, para efectos del análisis ulterior, las razones, en general, que justificaron la determinación del juez de instancia que declaró con lugar la supresión de identificación. El TPI, al concluir la vista en corte abierta expresó:

*"Estando sometido todas las partes y examinados los documentos sometidos en evidencia y escuchado el testimonio, el tribunal hace la siguiente determinación, la naturaleza de la misma la Regla 252, esto luego de una supresión típica bajo la Regla 234, que estamos hablando de las protecciones de la Sección 10 del Artículo de la Constitución del Estado Libre Asociado y la enmienda 14 de la Constitución de los Estados Unidos que presenta registro y allanamiento. La supresión que se ha dado bajo la Regla 252.1 es por las disposiciones de las protecciones de las cláusulas del debido procedimiento de ley. Por eso es que se entra en los errores de sugestividad y de confiabilidad en el proceso. Esa es la razón por la que tenemos fotos y grabaciones que son requeridos por dicha ley, porque es la única forma de poder determinar que se cumplió con el debido procedimiento de ley, y si hay sugestividad, y habla del proceso. Por tal razón, el análisis, si se debe o no suprimir, se hace a la luz de la cláusula del debido procedimiento de ley. En este caso, el Fiscal dijo, es para darle más confiabilidad a la identificación. El Tribunal debe determinar la credibilidad del testimonio de don Adrián, y realmente él conocía de antemano para sí. El "line up" es un [subterfugio] para credibilidad por medio de una corroboración viciada, aun mediante identificación previa. El "line up", como [subterfugio], para darle veracidad a que él conocía los imputados al momento de los hechos, de eso es que estamos hablando. Quedo más que claro el testimonio yo los conocía, tenían las caras descubiertas, mas los conozco a todos más de 20 años, desde chiquito. Cuando llegó el Teniente, yo se lo dije a todo el mundo, ahí los tres nombres fue, Elizardo, Christian y Félix, pero con todo y eso llamó, quienes faltaron al trabajo, Gordi y Bobo. Cuando viene el agente, al mediodía, le dice que faltaron estos tres, Elizardo, Christian y Félix, y más tarde Gordi y Bobo. Hay un asunto que dijo el Lcdo. Mangual, jurisprudencia del distrito federal, que [está basado] en la totalidad las circunstancias que rodean el procedimiento de identificación para determinar si es [confiable] o no el mismo. Es fácil determinar que yo voy a poner en un "line up" a una persona que conozco hace 20 años, yo lo voy a identificar, y más que le estoy viendo la cara. Por tal razón, el Tribunal entiende, y luego de [dirimir] la credibilidad del testimonio de don Adrián, de las identificaciones hechas lo único que falta es la grabación en el caso de Christian, porque lo cierto que él repitió en varias ocasiones. La forma, muy particular, hay que escucharla todos, tienen que decirlo de la misma forma y todos tienen que tener la misma voz, los podemos tener alto, bajitos, pero con la voz distinta, esto no hay de ninguna forma de corroborarlo, y más cuando por los fundamentos antes expuestos [se] va a suprimir la identificación hecha en la "rueda de detenidos", de voz de Christian y la identificación en la "rueda de detenidos" de Elizardo González Soto y Félix Soto Pagán. También añadimos este comentario, el 3 de abril, cuando él menciona a Christian en la declaración jurada, fue después de la "rueda de detenidos", fue antes. En aquel momento, ya que él insiste que desde el primer día, y en el momento que ocurrieron los hechos, que él sabía quiénes eran los otros dos, no lo menciona. Lo cierto es que tanto en el informe de delito de arresto, como en las declaraciones juradas, siempre se refiere a dos individuos. Una persona prudente, en el momento diría fue Juan, perencejo, fue Papo. Usualmente usan los apodos y no los ve en las declaraciones juradas fue Papo, fue José, fue Bobo, dice los individuos. Quedó suprimida."*

De la transcrita determinación judicial se concluye palmariamente que el TPI, en consideración a los testimonios brindados durante la vista de supresión de evidencia por el señor Morales Orengo y el Agente Torres, entendió que la identificación extrajudicial por medio de la confrontación por voz en el caso del acusado Christian Morales Arroyo, y la identificación mediante rueda de detenidos en el caso de los acusados, Elizardo González Soto y Félix Soto Pagán, no sólo era sugestiva, sino que además no era confiable. Que la admisión de dicho

testimonio de identificación viola el debido proceso, ya que el transcurso de la identificación no contó con suficientes elementos de confiabilidad. Esa insuficiencia de elementos de confiabilidad descansó esencialmente en la poca credibilidad que le adjudicó el TPI al testimonio de don Adrián respecto al hecho de que identificó a los acusados al momento de los sucesos. Es decir, ante la situación de si era cierto que en el mismo día que ocurrieron los hechos, él libre y espontáneamente identificó a los perpetradores del robo, el TPI adjudicó credibilidad y determinó que en conformidad al criterio rector de la totalidad de las circunstancias, esa primera identificación no era confiable. Que la confrontación de voz y rueda de detenidos no fue sino un subterfugio para, por medio de la sugestividad, brindar veracidad a esa primera identificación. Y que como cuestión de derecho, por lo tanto, el proceso de identificación, por estar viciado, es constitucionalmente inadmisible.

Dedujo abiertamente el TPI que la declaración del perjudicado "*yo los conocía, tenían las caras descubiertas, los conozco a todos hace más de 20 años; desde chiquito*", no armonizaba con el hecho de recurrir al "*line up*". Encontró que este procedimiento de identificación estaba viciado de sugestividad, en vista de que la conclusión inevitable era que si los conocía desde hacía tantos años, los iba a identificar, máxime cuando les veía la cara. Esto último, refiriéndose en particular a los acusados González Soto y Soto Pagán. Nuevamente, no adjudicó credibilidad al testimonio del testigo perjudicado, y en cuanto a la confrontación por voz del acusado Christian Morales, destacó que el procedimiento adolecía además de irregularidades. La grabación que exige la regla y que permite corroborar que en efecto todos expresaron la frase de la misma forma y con voces parecidas, no se realizó. Puntualizó, además, en cuanto a este último acusado, que no es sino con posterioridad a la confrontación por voz, el mismo 3 de abril, que el perjudicado prestó declaración jurada ante la Fiscal que realizaba la investigación, y entonces menciona allí el nombre de Christian. En cuanto a los otros dos acusados, se cuestionó la verdad de lo aseverado por el testigo en cuanto a que desde el primer día y en el momento de los hechos sabía quiénes eran "*los otros dos*" porque en dicha declaración jurada tampoco los menciona por sus nombres. "*Lo cierto es que, tanto en el informe de delito de arresto, como en las declaraciones juradas, siempre se refiere a dos individuos. Una persona prudente, en el momento diría fue Juan, perencejo, fue Papo. . .*". ■

Plantea el Procurador General que el testimonio del señor Morales Orengo en la vista evidenciaria, vista que se lleva a cabo a principios del presente año, configura una identificación que narra lo que ocurrió ese mismo día de los hechos cuando extrajudicialmente identificó perfectamente a sus victimarios, porque los reconoció y éstos habían sido sus empleados, que gozaban de su confianza y conocían todas sus movidas y así lo informó a los agentes que realizaron la investigación. ■ Entiende que esa identificación es válida y admisible, ya que es previa e independiente de la identificación que el TPI suprimió. La realidad es que el TPI determinó excluir dicho testimonio y la consecuente identificación por confrontación por adolecer de insuficiencia de confiabilidad, a la luz de la totalidad de las circunstancias. Los criterios aplicables a la evaluación de confiabilidad de la identificación nos llevan a coincidir con el TPI en que la exclusión de dicha identificación fue correcta. No cabe hablar entonces de determinar su valor probatorio de acuerdo a la credibilidad que se le otorgue a dicho testimonio. Ello es así porque como reiteradamente se ha enunciado desde *Gómez Incera, supra*, "*el debido proceso de ley protege al acusado de la admisión de evidencia viciada por una identificación anterior al juicio poco confiable obtenida a través de procedimientos innecesariamente sugestivos*". Citado en *Pueblo v. Peterson Pietersz, supra*, pág. 190. Se persigue a toda costa evitar cualquier identificación errónea en la que ha intervenido el Estado en un procedimiento sugestivo. Tal circunstancia activa las protecciones fundamentales del debido proceso de ley según establecido en la Sección 7 del Artículo 2 de la Constitución del Estado Libre Asociado de Puerto Rico y sus homólogas, las Enmiendas Quinta y Decimocuarta de la Constitución Federal.

En este caso, destaca en particular, en el contexto de un robo domiciliario perpetrado bajo las circunstancias descritas por el perjudicado Morales Orengo, si éste tuvo la oportunidad suficiente de observar y reconocer a los acusados en el momento de los hechos. Su versión de que los reconoció de inmediato porque tenían las caras descubiertas y eran sus empleados a los que conocía hace más de 20 años, quedó en entredicho por el sinnúmero de circunstancias contradictorias que salieron a relucir durante la celebración de la vista. Declaró que estaban encapuchados con la intención de no ser reconocidos; sin embargo, afirma que se les veía toda la cara. En cuanto

al acusado Christian Morales, hizo alusión a que llevaba una bufanda que le cubría la cara y que cuando se bajó a recoger el dinero y ésta se corrió fue cuando pudo confirmar que era él. Por otro lado, insiste que lo reconoció por la voz. Respecto a los asaltantes en general, indistintamente se refirió el testigo a los términos bufanda, capucha y careta, términos que como sabemos tienen significados distintos y que guardan relación directa en cuán descubierta o visible estaban las caras de los acusados. Asimismo, al describir el procedimiento de rueda de detenidos, aseguró que las personas que le presentaron estaban *"encapuchados e idénticos"* a los asaltantes que estuvieron en su casa.

En cuanto a los otros dos asaltantes, contrasta marcadamente su afirmación en la vista de que los reconoció inmediatamente que les vio la cara, con el hecho de que en la declaración jurada que prestó dos días después del incidente no mencionó sus nombres en ninguna parte. No dijo allí nombre en particular alguno ni que los conociera. [20] En cuanto a Christian, si bien señaló su nombre en dicha declaración, hay que considerar que ésta se tomó inmediatamente después de celebrada la rueda de detenidos por voz contra este acusado. Las circunstancias del robo que describe además en la declaración jurada denota un cuadro de mucha tensión en el que se palpa una identificación indirecta y en alguna forma conclusoria, *"yo pensé éste tiene que ser Christian"*. Nada en particular dijo tampoco sobre su tono de voz. Como se desprende de las aseveraciones del TPI, coincidimos en que el hecho que el perjudicado se refiriera *"a individuos"* en vez de llamarlos por su nombre fue un factor de gran importancia.

En cuanto al grado de atención prestado, es lógico razonar que en el ambiente de violencia y de ansiedad en el que se desenvolvieron los hechos, en unión a la presencia de armas, el número de asaltantes, el hecho de que lo tiraran al suelo y que se encontrara acompañado de su esposa, redujera el grado de atención prestado para lograr identificar con certeza. Sus descripciones fueron también generales, ello a pesar de que afirmó que se trataba de personas que eras sus empleados y que los conocía desde mucho tiempo atrás.

En definitiva, los hechos del caso demuestran que el TPI encontró que el testimonio del perjudicado no satisfacía los criterios de confiabilidad en la identificación extrajudicial de los recurridos. Su testimonio durante la vista contrastó notablemente con la declaración jurada cercana a los hechos, una vez identifica por voz al acusado Christian Morales y antes de la identificación por rueda de detenidos de los otros dos acusados.

Sin duda, fue el TPI quien, con todo el rigor que exige este proceso, aquilató la prueba de la identificación suministrada por el perjudicado en los procedimientos de identificación de confrontación por voz y de rueda de detenidos, al igual que la identificación en la declaración jurada antes aludida y los testimonios en cuanto a la forma en que se llevaron a cabo estos procedimientos. La alegada identificación directa y positiva que realizó el señor Morales Orengo, si bien se afirma que fue realizada fuera del ámbito y control policiaco y próxima a los sucesos, no gozó, sin embargo, de la credibilidad del TPI. Se cuestionó, y no sin razones fundadas, la veracidad de dicha afirmación por diversas consideraciones entre las que destaca que, alegadamente identificados, la policía no intervino para efectuar arrestos. Por el contrario, se actuó como si la víctima o perjudicado no podía reconocer o identificar a los atacantes. Sin en efecto se trataba de una identificación independiente, no era necesario que el Estado siguiera los métodos previstos en la Regla 252.

El estudio detallado de las declaraciones vertidas en la vista no nos provoca insatisfacción que amerite que intervengamos en la credibilidad que le mereció el testimonio del perjudicado y del Agente que intervino en el procedimiento al TPI.

*Por los fundamentos antes expresados, se expide y se confirma la Resolución recurrida.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones