Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br><br>V.<br><br><br>LUIS MONTALVO SAAVEDRA<br><br>Apelante | KLAN202300576 | Apelación procedente del Tribunal de Primera Instancia, Sala de Superior de Mayagüez<br><br>Caso Núm.: ISCR202100145 AL 0146<br><br>Sobre:<br>Art. 190 CP (2012), Art. 6.05 LA 168 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Jueza Mateu Meléndez y el Juez Marrero Guerrero.

Marrero Guerrero, Juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de octubre de 2024.

Comparece el Sr. Luis Montalvo Saavedra (señor Montalvo Saavedra o apelante) y solicita que revisemos una *Sentencia* dictada el 24 de abril de 2023 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI).[1] En esta, tras encontrar culpable y convicto al apelante por violación al Artículo 190 (e) del Código Penal de Puerto Rico, Ley Núm. 146-2012, según enmendada, 33 LPRA sec. 5260 (robo agravado), y al Artículo 6.05 de la Ley de Armas de Puerto Rico, Ley Núm. 168-2019, 25 LPRA sec. 466d, (portación, transportación o uso de armas de fuego sin licencia), el TPI le impuso una pena de cuarenta y cinco (45) años de reclusión, desglosada en veinticinco (25) años por el delito de robo agravado y veinte (20) años por portación de arma de fuego. Además, condenó al apelante al pago de una pena especial de trescientos dólares ($300.00) por cada cargo.

Con el beneficio de la comparecencia del apelante y de la Oficina del Procurador General en representación del Ministerio

---

[1] Apéndice de la Solicitud de *Certiorari*, Anejo L, pág. 507. Archivada y notificada en autos el 4 de junio de 2024.

Público, el expediente del TPI, así como con la transcripción de la prueba oral (TPO), nos encontramos en posición de resolver.

Por los fundamentos que expondremos a continuación, se confirma el fallo condenatorio por el cargo por el delito de robo agravado, y se revoca en cuanto al cargo por el delito de portación de arma de fuego.

**I.**

Surge de los autos originales que el Ministerio Público presentó dos (2) denuncias contra el señor Montalvo Saavedra por infracción al Artículo 190 (e) del Código Penal, *supra*, sec. 5260 (robo agravado) y al Artículo 6.05 de la Ley de Armas, *supra*, sec. 466d (portación, transportación o uso de armas de fuego sin licencia). Se alegó que allá para el 11 de noviembre de 2020 en San Germán, Puerto Rico, el apelante, ilegal, voluntaria y criminalmente, transportó y/o portó un arma de fuego con culata color negra, para la cual no tenía licencia de armas, que utilizó y mostró para cometer el delito de robo en la pizzería *Little Ceasars*, donde se apropió de $219.00, sustrayéndolos en la inmediata presencia y en contra de su voluntad de una empleada, por medio de intimidación.

Tras varios trámites procesales que resulta innecesario pormenorizar aquí, el juicio en su fondo se celebró por tribunal de derecho durante los días 28 y 29 de noviembre de 2022. Como prueba de cargo, el Ministerio Público ofreció el testimonio de la señora Eliani Rivera Casiano, la señora Shakira Comas Albino, la agente Karen Báez Ramos y el agente Wilkin Vélez Malavé. Por su parte, el señor Montalvo Saavedra presentó su propio testimonio. A continuación, se sintetiza lo declarado por los testigos:

**<u>Eliani Rivera Casiano</u>**

La testigo, quien era cajera en la pizzería *Little Ceasars* de San Germán, declaró que para el 11 de noviembre de 2020 trabajó desde

las 2:00 p.m. hasta las 7:00 p.m.[2] Estableció que, para dicha fecha, debido a la pandemia de COVID-19, en el establecimiento se requería la entrada de dos (2) clientes a la vez y el uso de mascarillas.[3] Relató que alrededor de las 3:45 p.m. del 11 de noviembre de 2020, entró un cliente con mascarilla y gorra, vestido con una camisa crema manga larga y un mahón largo que realizó lo siguiente:

> R Esta persona, como, este... que a eso era lo que iba, este, como, ya lo había visto, porque era cliente 'an'... este, verdad, 'frecuen'... frecuentaba 'ma'... este el, el establecimiento, pues, yo le pregunto... cuando él entró me dice... este, me dice algo, yo no lo escucho bien, yo le pregunto si es... que a nombre de quién, verdad, porque era un cliente, ¿qué puedo pensar yo? Pues entonces, él me dice, "'Eldie'" ... ahí es que él me dice: "El dinero", como yo me quedo 'paniqueada' vuelve y me dice él, este, "Los chavos", "Los chavos', y se levanta su camisa y me enseña la culata de una pistola.
>
> P ¿De qué color?
>
> R Eh, negra.
>
> [...]
>
> P Mire, ¿qué oportunidad tuvo usted de observar esa persona en ese momento?
>
> R Todo el tiempo. Mayormente desde que entra yo lo observo y, vuelvo y repito, lo que se... como es una persona que frecuentaba pues ya sabía...
>
> [...]
>
> P Y mire, y ¿por qué usted sabe que es una persona que frecuentaba ahí? Dígale a la Señora Juez.
>
> R Ok. Por el tono de... Pues, por su tono de voz, que es... por su voz arrogante, por su, su forma de caminar...
>
> [...]
>
> R Por su... Por su... Como por su... Como medio... Es que no me gusta decir la palabra, pero...
>
> [...]
>
> R Como medio imprudente, 'jeje', este, algo así. Sabe, como con carácter fuerte.
>
> P Y, ¿cómo es su 'fu'... su voz?
>
> R Bien gruesa. Bien peculiar. Sabe, no es muy común. La voz de él no es muy común.
>
> P Mire, y físicamente, de, de lo que usted podía observar, ¿qué usted reconocía de él?

---

[2] TPO del 28 de noviembre de 2022, pág. 52, líneas 13-16; pág. 54, líneas 15-19; pág. 55, líneas 1-10.
[3] *Íd.*, pág. 54, líneas 5-14.

R La gesta. Él siempre tenía como esta gesta...

[...]

R ...usted hace así usted fruñe el... su cara, el, el, el... la parte de sus ojos y su frente.[4]

Estableció que el cliente se levantó la camisa por dos (2) ocasiones para mostrarle la culata de una pistola y peticionarle dinero.[5] Con respecto al arma, la testigo estableció lo siguiente:

P Óigame, la realidad es que usted, el momento, y según el video puesto aquí, el momento en el que usted dice que, que lo tiene de frente y que ve que él se levanta la camisa duró menos de un segundo, ¿verdad que sí?

R 'Ujum'.

[...]

R Sí, pero él lo hizo en dos (2) intentos.

P Dos (2) intentos...

R 'Ujum'.

[...]

P Y en ninguno de los dos (2) intentos usted vio un tatuaje, ¿verdad que no?

R Fue tan rápido que no, no... verdad, no pude...

[...]

P ...rápido que no pudo verlo.

R 'Ujum'.

P Óigame, el asaltante en ningún momento sacó el arma que usted la haya visto...

R No.

R ...completa, la presunta arma, o el objeto que fuera.

R 'Ujum'. No. No.

P O sea, que él no lo cargó. Que usted viera que era un arma de esas que se...

R No...

[...]

P O sea, que usted no sabe si es un revólver o una pistola.

R Exacto. No.

---

[4] *Íd.*, pág. 65 líneas 18-19; pág. 66, líneas 1-7; pág. 67, líneas 15-19; pág. 68, líneas 1-19.

[5] *Íd.*, pág. 60, líneas 1-19; pág. 61, líneas 1-16; pág. 62, líneas 1-19; pág. 63, líneas 1-6; pág. 65, líneas 14-19; pág. 66, líneas 1-7.

[…]

R …se vio la, la, la, culata del arma.

P O sea, que usted de… Usted… El objeto completo, usted no lo vio.

R No.

P Usted cree que puede ser una pistola. Eso es lo que usted cree.

R Sí, porque se ve la 'pers'… tú sabes, la, la…

[…]

R Sí, pues, este, una pistola. O lo, pues, por lo menos, la culata, no puede decir si era pistola o revólver porque no, no… pero sí, era la culata de una… de un…

[…]

R …revólver o pistola, lo que sea.

P Usted, 'desconozco' si es revólver, pistola, calibre, ¿verdad que no? No sabe si el mango tenía un color diferente o algo, desconoce eso.

R Era la 'prim'… Es la primera vez y la… que he visto un, un…

P Un arma.

R Un arma.

P Ok. O sea, que usted desconoce si es un arma de juguete o es un arma real.

[…]

R …no… Desconozco. Exacto.

P Desconoce. Óigame, usted no escuchó que cuando el 're'… el asaltante salió [e] hizo un disparo. Usted no escuchó: "Pa'", que detonara.

R No.

P Ni vio que la cargó.

R No.

P Ni la amenazó con hacerle un disparo.

R No.

P Ni se la apuntó a nadie.

R No. Solamente, vuelvo, la mostró, vuelvo y repito.

P O sea, que usted no se quiere… ni siquiera usted sabe si ese objeto dispara o no dispara, es la realidad.

R NO, ni quería saber tampoco en el momento.[6]

---

[6] *Íd.*, pág. 106, líneas 3-19; pág. 107, líneas 1-17, pág. 108, líneas 12-19; pág. 109, líneas 1-18.

La testigo identificó al señor Montalvo Saavedra en sala como el cliente que cometió los hechos. Conforme con su testimonio, el cliente se apropió de $219.00.[7] Narró que, el día de los hechos, cuando los agentes del Negociado de la Policía de Puerto Rico observaron los vídeos de las cámaras de seguridad, la agente Karen Báez Ramos le indicó que conocía a esa persona anteriormente, apodada Pito Dora, porque la había arrestado en varias ocasiones.[8] No obstante, la testigo subrayó que, previo a los hechos, desconocía el nombre del cliente.[9] Particularizó que el 13 de noviembre de 2020, señaló rápidamente la fotografía número (7) en la rueda de fotografías, la cual identificaba al apelante.[10]

### Shakira Comas Albino

La testigo, quien era *crew leader* en la pizzería *Little Ceasars* de San Germán, atestó que observó al señor Montalvo Saavedra, a quien había visto varias veces en el establecimiento, entrar a la pizzería con una gorra oscura, un mahón largo y una camisa de manga larga.[11] Relató que escuchó cuando el apelante expresó "[a]vanza, mue [...] muévete, dame los chavos" a la señora Rivera Casiano y observó cuando se levantó la camisa y le enseñó "como el mango de un arma de fuego".[12] Afirmó que desconocía si el objeto era capaz de producir un tiro.[13]

### Karen Báez Ramos

La agente Báez Ramos, quien laboraba para el Distrito de San Germán de la Policía de Puerto Rico, manifestó que, en horas de la tarde del 11 de noviembre de 2020, le cursaron un aviso vía radio sobre un robo en *Little Ceasars* de San Germán.[14] Testificó que

---

[7] *Íd.*, pág. 85, líneas 9-19; pág. 86, línea 1.
[8] *Íd.*, pág. 72, líneas 1-13; pág. 77, líneas 1-9.
[9] *Íd.*, pág. 77, líneas 10-12.
[10] *Íd.*, pág. 78, líneas 7-11; pág. 80, líneas 1-8.
[11] *Íd.*, pág. 134, líneas 1-10; pág. 137, líneas 1-8; pág. 138, líneas 1-14; pág. 141, líneas 1-6; pág. 143, líneas 17-18.
[12] *Íd.*, pág. 145, líneas 4-7.
[13] *Íd.*, pág. 174, líneas 2-4.
[14] *Íd.*, pág. 192, líneas 4-10.

mientras observaba los vídeos capturados por las cámaras de seguridad, divisó que el actor de los hechos era conocido en San Germán como Pito Dora.[15] Identificó en corte abierta que Pito Dora era el señor Montalvo Saavedra.[16] Declaró que en el vídeo observó que la persona tenía en los dedos de los manos las mismas sortijas que el apelante tenía puestas en el TPI.[17]

**Wilkin Vélez Malavé**

El agente investigador Vélez Malavé de la División de Robos del Distrito de Mayagüez, declaró que, como parte de la investigación, entrevistó a la agente Báez Ramos, quien le informó que pudo identificar al actor de los hechos por su físico, andar y voz, ya que había intervenido con él anteriormente.[18] Indicó que la agente Báez Ramos le comentó que dicha persona era el señor Montalvo Saavedra, conocido como Pito Dora.[19] Estableció que con la información que obtuvo a través de la agente Báez Ramos sobre el señor Montalvo Saavedra y las descripciones de la señora Rivera Casiano, buscó el *mugshot* del apelante y fotografías de otras personas con características físicas similares para realizar la identificación mediante fotografías.[20] Expresó que no le comentó a la señora Rivera Casiano que el señor Montalvo Saavedra era el sospechoso, ni le indicó que el sospechoso se encontraba entre las fotografías.[21] Atestó que cuando la señora Rivera Casiano llegó a la comandancia a observar el muestrario de nueve (9) fotografías, señaló que la persona de la foto número siete (7) cometió los hechos.[22] Adujo que la señora Rivera Casiano expresó que el sospechoso llevaba más de un (1) año entrando al establecimiento sin mascarilla, razón por lo que lo pudo

---

[15] *Íd.*, pág. 196, líneas 11-13.
[16] *Íd.*, línea 14.
[17] *Íd.*, pág. 206, líneas 1-5.
[18] TPO del 29 de noviembre de 2022, pág. 241, líneas 1-17.
[19] *Íd.*, pág. 243, líneas 1-9.
[20] *Íd.*, pág. 246, líneas 1-17.
[21] *Íd.*, pág. 248, líneas 7-14.
[22] *Íd.*, pág. 247, líneas 17-19; pág. 249, líneas 1-6.

identificar. Testificó que el señor Montalvo Saavedra no tenía portación de armas, debido a que en la División de Armas del Negociado de la Policía de Puerto Rico le informaron que el apelante no tenía armas de fuego registradas.[23]

**Luis A. Montalvo Saavedra**

Para efectos de comparar la voz del actor de los hechos en el vídeo, señor Montalvo Saavedra expresó "dame los chavos", "ahora"[24] y "avanza, avanza, olvídate de eso".[25]

Luego de celebrarse el juicio en su fondo, el TPI encontró culpable al señor Montalvo Saavedra por todos los delitos imputados. Poteriormente, el 24 de abril de 2023, el Foro Primario sentenció al apelante a una pena total de cuarenta y cinco (45) años de reclusión a cumplirse consecutivamente, a razón de veinticinco (25) años por el delito de robo agravado y veinte (20) años por el delito de portación, transportación o uso de armas de fuego sin licencia, más el pago de la pena especial.

Inconforme, el señor Montalvo Saavedra acudió ante nos mediante una apelación criminal y nos planteó que el TPI incidió en cometer los siguientes errores:

> **A. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ENCONTRARME CULPABLE EN VIRTUD DE UNA PRUEBA QUE NO DERROTÓ MI PRESUNCIÓN DE INOCENCIA Y MUCHO MENOS ESTABLECIÓ MI CULPABILIDAD MÁS ALLÁ DE DUDA RAZONABLE.**
>
> **B. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ENCONTRARME CULPABLE A PESAR DE QUE EL PROCESO DE IDENTIFICACIÓN FUE UNO VICIADO: NO HABIENDO ESTABLECIDO LA IDENTIFICACIÓN DEL ACUSADO MÁS ALLÁ DE DUDA RAZONABLE.**
>
> **C. NO RENUNCIO AL DERECHO DE PODER PRESENTAR ERRORES ADICIONALES DE DERECHO ANTE EL HONORABLE TRIBUNAL DE APELACIONES, TRAS LA DEBIDA EVALUACIÓN DEL EXPEDIENTE DE INSTANCIA Y LA TOTALIDAD DE LA PRUEBA ORAL, DESFILADA DURANTE EL JUICIO EN SU FONDO, POR EL ABOGADO APELATIVO A QUIEN LE ASIGNEN EL PRESENTE CASO.**

---

[23] *Íd.*, pág. 264, líneas 1-10.
[24] *Íd.*, pág. 298, líneas 1-10.
[25] *Íd.*, pág. 299, líneas 1-9.

**(HENDERSON V. US, 133 SCT. 1121 (2013); PUEBLO V. SOTO, 95 D.P.R. 483 [(1967)]).**

**D. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN DETERMINAR LA CULPABILIDAD DEL SEÑOR LUIS MONTALVO SAAVEDRA A PESAR DE QUE EL MINISTERIO PÚBLICO NO LA PROBÓ M[Á]S ALLÁ DE DUDA RAZONABLE AL INCUMPLIR CON EL QUANTUM DE PRUEBA REQUERIDO PARA REBATIR LA PRESUNCIÓN DE INOCENCIA YA QUE HABER OBSERVADO "COMO EL MANGO O CULATA NEGRA DE UN ARMA", NO ES EVIDENCIA CLARA Y CONVINCENTE DE QUE ES UN ARMA DE FUEGO, COMO ELEMENTO DEL DELITO EN EL ARTÍCULO 6.05 DE LA LEY DE ARMAS #168 DE 2019 Y EN EL AGRAVANTE DEL ARTÍCULO 190 INCISO (E) DEL CÓDIGO PENAL DE PR 2012.**

En atención a los errores planteados por el apelante, procedemos a exponer la normativa jurídica atinente a este recurso.

## II.

### A. Apelación criminal

En nuestro ordenamiento jurídico, toda persona acusada tiene derecho a apelar cualquier sentencia penal que recaiga en su contra. *Pueblo v. Torres Medina*, 211 DPR 950, 959 (2023); *Pueblo v. Serbiá*, 78 DPR 788, 791-792 (1955). La apelación es un privilegio estatutario que adquirió un carácter cuasi-constitucional y forma parte del debido proceso de ley. *Pueblo v. Serbiá, supra*, pág. 792; *Pueblo v. Rivera Ortiz*, 209 DPR 402, 419 (2022); *Pueblo v. Esquilín Díaz*, 146 DPR 808, 815-816 (1998); *Pueblo v. Prieto Maysonet*, 103 DPR 102, 104 (1974). Una vez este Tribunal de Apelaciones adquiere jurisdicción, tenemos el deber de resolver el recurso de apelación en sus méritos. *Pueblo v. Colón Canales*, 152 DPR 284, 291 (2000). En tal sentido, los tribunales apelativos poseemos la facultad de examinar cualquier error de derecho cometido por el tribunal de instancia, así como cualquier asunto de hecho y derecho. *Pueblo v. Rivera Ortiz, supra*, págs. 421-422; *Pueblo v. Irizarry*, 156 DPR 780, 788 (2002). Pues, como cuestión de derecho, la determinación de probar la culpabilidad de una persona más allá de duda razonable es revisable, dado que la apreciación de la prueba es un asunto tanto de hecho como de derecho. *Pueblo v. Irizarry, supra*; *Pueblo v. Torres*

*Medina, supra; Pueblo v. Rivero Lugo y Almodóvar,* 121 DPR 454, 473 (1988); *Pueblo v. Pagán Díaz,* 111 DPR 608, 621 (1981).

Al evaluar si se probó la culpabilidad de un acusado más allá de duda razonable, es norma trillada que el juzgador de los hechos está en mejor posición para apreciar y aquilatar la prueba presentada. *Pueblo v. Casillas, Torres,* 190 DPR 398, 416 (2014). Por ello, la apreciación de la prueba del juzgador de los hechos merece gran respeto y deferencia por parte de un foro apelativo. *Íd.* Así las cosas, los tribunales apelativos solamente intervendremos con la apreciación de la prueba cuando se demuestre existencia de pasión, prejuicio, parcialidad o error manifiesto. *Íd.* pág. 417; *Pueblo v. Rivera Ortiz, supra,* pág. 422; *Pueblo v. Irizarry, supra,* págs. 788-789. Además, intervendremos cuando surjan serias dudas, razonables y fundadas sobre la culpabilidad de la persona acusada. *Pueblo v. Casillas, Torres, supra; Pueblo v. Irizarry, supra,* pág. 789. Sin embargo, "si de un análisis ponderado de la prueba desfilada ante el foro primario surge duda razonable y fundada sobre si la culpabilidad del acusado fue establecida más allá de duda razonable, este Tribunal tiene el deber de dejar sin efecto el fallo o veredicto condenatorio". *Pueblo v. Casillas, Torres, supra.*

Cuando un acusado presenta un recurso de apelación en el que plantea como error insuficiencia de la prueba, así como errores de derecho, los foros apelativos realizaremos un escrutinio de dos (2) partes. *Pueblo v. Ortiz Colón,* 207 DPR 100, 125 (2021). En primer lugar, evaluaremos la alegación de insuficiencia de prueba que, de ser meritoria, procede absolver al acusado. *Íd.* Ahora bien, si el reclamo de insuficiencia de la prueba resulta inmeritorio, procede atender los errores de derecho. *Íd.*

### B. Identificación de un sospechoso de delito

Una de las etapas más críticas del procedimiento criminal es la identificación del imputado de un delito. *Pueblo v. Toro Martínez,* 200

DPR 834, 863 (2018); *Pueblo v. Ramos Álvarez*, 122 DPR 287, 311 (1988); *Pagán Hernández v. Alcaide*, 102 DPR 101, 112 (1974). Pues, para que exista un juicio justo e imparcial, se debe garantizar debidamente la forma de identificar a la persona imputada de la comisión de un delito. *Pueblo v. Gómez Incera*, 97 DPR 249, 252 (1969). No puede haber una convicción sin que se presente prueba que conecte a la persona imputada como la responsable de los hechos delictivos que se le imputan, más allá de duda razonable. *Pueblo v. Rodríguez Maysonet*, 119 DPR 302, 309 (1987).

Nuestro ordenamiento jurídico provee para que las personas perjudicadas o los testigos oculares identifiquen a la persona que cometió un delito cuando no lo conoce. *Pueblo v. Toro Martínez, supra*. En tal sentido, la Regla 252 de Procedimiento Criminal, 34 LPRA Ap. II, R. 252, rige lo concerniente a la identificación del sospechoso de un delito previo al juicio, sea mediante la rueda de detenido o la identificación mediante fotografías. En lo atinente a la identificación mediante fotografías, la Regla 252.2 de Procedimiento Criminal, *supra*, R. 252.2, establece lo siguiente:

> (a) Los agentes y funcionarios del orden público podrán hacer uso de fotografías para identificar el posible autor de un acto delictivo únicamente en las siguientes circunstancias:
>> (1) Cuando por razones fuera del control de los agentes o funcionarios del orden público no fuere posible o necesario realizar una rueda de detenidos.
>> (2) Cuando no exista sospechoso del acto delictivo.
>> (3) Cuando existiendo un sospechoso éste se negare a participar en la rueda, o su actuación o ausencia impidiese que la misma se efectúe adecuadamente.
> (b) La utilización de fotografías como medio de identificación se regirá por las siguientes reglas:
>> (1) Se le mostrarán al testigo no menos de nueve (9) fotografías incluyendo la del sospechoso y éstas presentarán, en adición al sospechoso, personas de rasgos similares a éste.
>> (2) Si dos o más testigos fueran a hacer la identificación fotográfica cada uno hará la identificación por separado.
>> (3) En ningún caso se le sugerirá al testigo la persona que debe seleccionar, mediante la forma de llevar a cabo el procedimiento, por marcas en las fotografías, o cualquier otro medio.
>> (4) Celebrada la identificación fotográfica, si el testigo identificara el autor de los hechos delictivos se procederá a levantar un acta que resuma brevemente el procedimiento seguido y se identificarán las fotografías utilizadas de manera que posteriormente pueda

establecerse cuáles fueron las fotografías presentadas al testigo.

En *Pueblo v. Mejías*, 160 DPR 86, 92-93 (2003), el Tribunal Supremo expresó que "es permisible una identificación mediante fotografías, siempre que no medien circunstancias que impliquen sugestión o que requieran la utilización de otros mecanismos de identificación".

Dado que el procedimiento para identificar a un sospechoso de un delito puede macularse por circunstancias que afectan en sentido de percepción, deben existir salvaguardas necesarias que eviten malograr la justicia. *Pueblo v. Gómez Incera, supra*, pág. 253. Puesto que, de lo contrario, admitirse en evidencia una identificación viciada puede constituir una violación al debido proceso de ley. *Pueblo v. Rodríguez Maysonet, supra*. El debido proceso de ley protege contra la sugestividad innecesaria en la identificación del sospechoso. E. L. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Investigativa*, Ed. Situm, San Juan, 2017, pág. 208. A tal efecto, la persona acusada puede solicitar la supresión de una identificación por el proceso estar plagado de errores, ser sugestivo, o estar falto de confiabilidad. *Pueblo v. Rodríguez Maysonet, supra.*, pág. 308; *Pueblo v. Toro Martínez, supra*.

No obstante, la determinación sobre la violación del debido proceso de ley durante el procedimiento de identificación depende de la totalidad de las circunstancias presentes en el mismo y los hechos particulares del caso. *Pueblo v. Rodríguez Maysonet, supra*, pág. 309-310; *Pueblo v. Hernández González*, 175 DPR 274, 289-290 (2009); *Pueblo v. Peterson Pietersz*, 107 DPR 172, 183 (1978). Un procedimiento de identificación es válido, a pesar de contar con la presencia de elementos sugestivos, si están presentes los siguientes elementos de confiabilidad: (1) la oportunidad de observación que tuvo el testigo; (2) el grado de atención que prestó durante los

sucesos; (3) la fidelidad de la descripción y los detalles que ofreció al ser investigado; (4) el nivel de certeza que demostró cuando identificó a la persona sospechosa, y (5) el tiempo transcurrido entre la comisión del hecho delictivo y la confrontación posterior con la persona sospechosa. *Pueblo v. Peterson Pietersz, supra; Pueblo v. Gómez Incera, supra.* Cabe destacar que el hecho de que un testigo haya tenido oportunidad de observar al actor de los hechos sólo por varios segundos no hace que la identificación sea sugestiva. *Pueblo v. Mejías, supra,* pág. 94. Además, al analizar los errores en el procedimiento de identificar a una persona sospechosa, "[l]o importante no es el método utilizado en la identificación, sino que la misma sea libre, espontánea y confiable". *Pueblo v. Ramos Delgado,* 122 DPR 287, 312 (1988). Importante resulta también que la conclusión del juzgador de los hechos sobre la confiabilidad del método de identificación del sospechoso merece el respeto y la validez que ordinariamente los foros apelativos le otorgamos a las determinaciones de hechos. *Pueblo v. Mejías, supra,* pág. 93; *Pueblo v. Ortiz Pérez,* 123 DPR 216, págs. 223-224 (1989).

### C. Portación, transportación o uso de armas de fuego sin licencia

El derecho fundamental a poseer y portar armas de fuego para defensa propia al amparo de la Segunda y Decimocuarta Enmienda de la Constitución federal puede ser regulado y reglamentado por los estados, siempre que sea consistente con la tradición histórica sobre la regulación de armas de fuego. *NY State Rifle & Pistol Assn., Inc. v. Bruen,* 597 US 1 (2022); Véase también *Pueblo v. Meléndez Monserrate,* 2024 TSPR 80; *Pueblo v. Rodríguez López et al.,* 210 DPR 752, 775 (2022). Es decir, el derecho a poseer y portar armas de fuego no es absoluto, ya que no se reconoce el derecho a poseer y portar cualquier arma, de cualquier manera y para cualquier propósito.

*District of Columbia v. Heller*, 554 US 570 (2008); Véase *Pueblo v. Rodríguez López et al.*, *supra*, págs. 767-768.

En tal sentido, la Ley de Armas de Puerto Rico, *supra*, contiene un esquema para la expedición de una licencia de armas que faculte la posición, tenencia y transportación de armas de fuego. Véase Art. 2.01 al 2.17 de la Ley de Armas, *supra*, secs. 462-462p. Se requiere una licencia de armas vigente para adquirir, comprar, transportar, vender, donar, traspasar, tener, poseer, custodiar, portar, usar y conducir armas, armas de fuego, municiones o cualquier accesorio. Art. 2.02 (e) de la Ley de Armas, *supra*, sec. 462a. El Artículo 2.02 (e) de la Ley de Armas, *supra*, sec. 462a, unifica la actividad de poseer con la de portar y transportar armas. A. Bermúdez Torres, <u>*Delitos Especiales en Puerto Rico: Análisis de los Tipos Delictivos Interrogatorios y Testimonios de Base*</u>, Ed. LexJuris de Puerto Rico, Bayamón, 2022, pág. 60. Es decir, "basta tener la licencia de armas para que la persona pueda, además de poseerla, portar, conducir o transportar el arma de fuego más allá de los límites de su residencia, negocio o finca, respectivamente, independientemente de que ocurra o no en la vía pública". Íd., pág. 59. Un arma de fuego es "cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, rev[ó]lver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas". Art. 1.02 (e) de la Ley de Armas, *supra*, sec. 461a.

El Artículo 6.05 de la Ley de Armas, *supra*, sec. 466d, tipifica el delito de portación, transportación o uso de armas de fuego sin licencia, cuyo elemento esencial es la ausencia de una licencia de armas vigente. A. Bermúdez Torres, *op. cit.*, pág. 58. El referido artículo dispone que incurre en delito grave, toda persona que porte, transporte o use cualquier arma de fuego sin tener una licencia de

armas vigente, excepto lo dispuesto para los campos de tiro o lugares donde se practica la caza. Art. 6.05 de la Ley de Armas, *supra*, sec. 466d. Su propósito radica en especificar las consecuencias penales de incumplir con el esquema de licenciamiento y permiso para la portación y el uso de un arma de fuego. *Pueblo v. Rodríguez López et al.*, *supra*, pág. 765. Por tanto, el elemento común de este delito es la ausencia de licencia de armas vigente. A. Bermúdez Torres, *op. cit.*; Véase también *Pueblo v. Negrón Nazario*, 191 DPR 720, 752 (2014). Importante es que cuando el Estado acusa a una persona por portación ilegal de armas y no presenta la misma por no haber sido ocupada, la prueba de cargo debe ser clara y convincente. *Pueblo v. Torres Nieves*, 105 DPR 340, 347 (1976).

La ausencia de licencia se demostraba al activarse la presunción de portación o posesión ilegal. Es decir, el Ministerio Público no estaba obligado a probar que la persona acusada no tenía licencia de armas cuando se alegó tal hecho en la acusación y se probó la portación o posesión del arma, creando así una presunción de portación o posesión ilegal que le correspondía al acusado destruir tal presunción. *Íd.,* pág. 349; *Pueblo v. Cortés Del Castillo*, 86 DPR 220, 235 (1962); *Pueblo v. Oquendo Quiñones*, 79 DPR 542, 547 (1956); *Pueblo v. Pacheco Ruiz*, 78 DPR 24, 30 (1955); *Pueblo v. Maldonado*, 77 DPR 736, 738 (1954). Dicha presunción correspondía a que la posesión y portación de armas se consideraba un privilegio y no un derecho. *Pueblo v. Colón González*, 209 DPR 967, 980 (2022); *Pueblo v. Geraldino Del Río*, 113 DPR 684, 689 (1982). No obstante, en *McDonald v. City of Chicago*, 561 US 742 (2010), el Tribunal Supremo federal reconoció que el derecho a poseer armas establecido en la Segunda Enmienda de la Constitución federal era un derecho fundamental extensivo a los estados bajo la Cláusula del Debido Proceso. Dicho reconocimiento es extensivo a Puerto Rico. *Pueblo v. Colón González, supra*, pág. 981. En *Pueblo v. Nieves Cabán*, 201 DPR

853, 876 (2019), el Tribunal Supremo de Puerto Rico resolvió que, en la etapa de vista preliminar que el Estado debe cumplir con el estándar de una *scintilla* de evidencia, es permisible aplicar la presunción ilegal de armas de fuego para encontrar causa probable para juicio. Ahora bien, en la etapa de un juicio por jurado que el Estado debe probar la culpabilidad de la persona acusada más allá de duda razonable, el Tribunal deberá explicar que la presunción de portación ilegal permite, pero no obliga a presumir el hecho de la falta de licencia para portar un arma de fuego. *Pueblo v. Colón González, supra*, pág. 990. De esta manera, solo basta que la persona acusada arroje duda razonable sobre el hecho presumido para que no opere la presunción y aun si la persona acusada no presentara prueba, el jurado no viene obligado a inferir dicho hecho. *Íd.*; *Pueblo v. Sánchez Molina*, 134 DPR 577, 595 (1993). Pues, si una presunción desfavorece a la persona acusada, es controvertible, permisible y débil, es decir, que el juzgador está autorizado a inferir el hecho presumido, pero no está obligado. *Pueblo v. Colón González, supra*, pág. 987.

No obstante, recientemente, en *Pueblo v. Meléndez Monserrate, supra,* el Tribunal Supremo de Puerto Rico revocó la referida forma de aplicar la presunción del delito de portación ilegal en la etapa de juicio. Esto toda vez que dicha presunción invierte el peso de la prueba y releva al Estado de su obligación de presentar prueba más allá de duda razonable sobre el elemento de la ausencia de permiso de portación de armas. *Íd.* Se estableció que "es insuficiente presentar prueba directa o circunstancial de la portación o posesión del arma ni el uso o los delitos cometido con esta para con ello probar, además, el elemento de ausencia de licencia". *Íd.* El Estado no puede descansar únicamente en la presunción de ausencia de licencia, sino que debe presentar prueba directa o circunstancial suficiente y satisfactoria tanto de la portación del arma como de la falta de

licencia para portarla o poseerla. *Íd.* El Alto Foro Judicial de Puerto Rico resolvió que, si el Estado no cuenta con prueba directa, como la certificación de la licencia de armas expedida por la Policía de Puerto Rico o la confesión corroborada de la persona acusada, puede probar la ausencia de licencia de armas mediante prueba indirecta o circunstancial. *Íd.* En tal eventualidad de presentar prueba circunstancial, los tribunales pueden evaluar la aplicación de la presunción de ausencia de licencia, sin violentar los derechos constitucionales de la persona acusada. *Íd.*

El delito de portación, transportación o uso de armas de fuego sin licencia tiene una pena de reclusión fija de diez (10) años, no obstante, de mediar circunstancias agravantes o atenuantes, la pena puede ser aumentada hasta un máximo de veinte (20) años o reducida hasta un mínimo de cinco (5) años, respectivamente. Art. 6.05 de la Ley de Armas, *supra*, sec. 466d. Se considera como un agravante que el arma ilegal se utilice en la comisión de cualquier delito o su tentativa y se considera como atenuante cuando el arma esté descargada y la persona no tenga municiones a su alcance. *Íd.* Igualmente, el referido artículo establece que:

> Cuando el arma sea una neumática, pistola de o artefacto de descargas eléctricas, de juguete o cualquier imitación de arma y ésta se portare o transportare con la intención de cometer delito o se usare para cometer delito, la pena será de reclusión por un término fijo de cinco (5) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de (1) año. *Íd.*

### D. Robo agravado

En otro extremo, a tenor con el Artículo 189 del Código Penal, *supra,* sec. 5259, comete el delito de robo "[t]oda persona que se apropie ilegalmente de bienes muebles pertenecientes a otra, sustrayéndolos de la persona en su inmediata presencia y contra su voluntad, por medio de violencia o intimidación, o inmediatamente después de cometido el hecho emplee violencia o intimidación sobre

una persona para retener la cosa apropiada [...]". En este tipo de delito, la sustracción o retención del bien apropiado se realiza en la presencia inmediata y contra la voluntad del sujeto. D. Nevares Muñiz, *Código Penal de Puerto Rico*, Ed. Instituto para el Desarrollo del Derecho, Inc., 2005, pág. 301.

Uno de los elementos de este delito es la violencia, que es el empleo de fuerza física. *Pueblo v. Lucret Quiñones*, 111 DPR 716, 739 (1981). Sin embargo, cualquier tipo de fuerza o agresión es suficiente para constituir la violencia requerida para el delito de robo. D. Nevares Muñiz, *óp. cit.*, pág. 301. El factor más importante es que dicha fuerza, incluso la más leve, tenga el efecto de lograr que una persona se desprenda de los bienes que le pertenecen o tiene en su posesión. *Íd.*; véase *Pueblo v. Batista Montañez*, 113 DPR 307 (1982). Otro elemento del delito de robo es la intimidación, que "es la presión moral que por miedo se ejerce sobre el ánimo para conseguir de una persona un objeto determinado". *Pueblo v. Lucret Quiñones, supra.* Ahora bien, la violencia o intimidación ejercida para apropiarse del bien tiene que ser coetánea al momento del desplazamiento del bien. D. Nevares Muñiz, *óp. cit.*, pág. 302.

El delito de robo alcanza su tipo agravado cuando, entre otros, medie el uso de un arma de fuego en la comisión del delito. Art. 190 del Código Penal, *supra*, sec. 5260.

Para fines persuasivos, en otras jurisdicciones se ha determinado que el hecho de que la persona perjudicada de un robo observe lo que parece ser el mango u otro elemento de un arma de fuego, incluso si no pudo confirmar que realmente era un arma, constituye evidencia suficiente para la convicción de una persona acusada de robo agravado mediante el uso de arma de fuego. Esto se debe a que el acusado se apropió de un bien haciendo que el perjudicado creyera razonablemente que estaba armado y que le podía infligir un daño. Véase *David v. State*, 2016 Ark. App. 274; *In*

*re G.L,* 2011-Ohio-1086; *State v. Coots,* 2015-Ohio-126; *Peterson v. State,* 2004 Tex. App. LEXIS 6568; *Hightower v. State,* 1997 Tex. App. LEXIS 2726.

En un caso similar, en *State v. Potchik,* 2011-Ohio-501, el señor Potchik apeló su condena por robo agravado ante el argumento de que el Estado no presentó prueba suficiente para concluir que utilizó un arma de fuego para cometer un robo. Esto, al entender que la perjudicada simplemente asumió que él portaba un arma. En este caso, la cajera de una farmacia testificó que el apelante se levantó una camisa, le mostró lo que parecía ser la culata de un arma de fuego escondida en sus pantalones y le peticionó dinero. A pesar de que la testigo admitió que carecía de conocimiento sobre las armas, afirmó que no tenía dudas de que el apelante le mostró un arma de fuego. La Corte de Apelaciones para el Segundo Distrito de Ohio confirmó la determinación del jurado en darle crédito al testimonio de la testigo ocular que afirmó que el apelante le mostró un arma de fuego durante un robo.

En *Jones v. State,* 2015 Tex. App. LEXIS 11684, el apelante señaló que no se presentó evidencia suficiente para demostrar que cometió el delito de robo agravado utilizando un arma de fuego real, ya que sólo le mostró al perjudicado el mango de "algo" sin hacer una amenaza verbal ni apuntar con un arma. El perjudicado testificó que el apelante se levantó la camisa para mostrarle lo que parecía un arma de fuego de calibre .9 milímetros con un mango negro. El perjudicado expresó que creyó que el arma de fuego era real y que su vida estaba en peligro, aun cuando no pudo confirmar si era un arma verídica. La Novena Corte de Apelaciones de Texas confirmó el veredicto condenatorio y resolvió que no se requería que el testigo observara detalles específicos como el gatillo, el mango u otros indicios para demostrar el uso del arma de fuego en el robo agravado. El tribunal estableció que el jurado pudo inferir razonablemente del

testimonio del perjudicado que se utilizó un arma de fuego real para cometer el robo.

Evaluada la normativa jurídica atinente a este recurso, procedemos a aplicarla a los hechos de este caso.

**III.**

En el presente caso, el señor Montalvo Saavedra adujo que la prueba de cargo presentada en su contra no derrotó su presunción de inocencia, razón por la cual entendió que no se probó su culpabilidad por los delitos imputados, más allá de duda razonable.

Como primer y cuarto planteamiento de error, el apelante estableció que incidió el TPI al determinar su culpabilidad, a pesar de que el Ministerio Público no probó más allá de duda razonable el elemento del arma de fuego requerido para el robo agravado y la portación, transportación y uso de armas de fuego sin licencia. Arguyó que nuestro ordenamiento jurídico no permitía que el juzgador presumiera que el alegado objeto utilizado para los hechos de este caso haya sido un arma de fuego, sin una prueba clara y convincente. Pues, concibió que el hecho de que las señoras Rivera Casiano y Comas Albino indicaron que vieron lo que entendían que era una culata o mango de un arma de fuego no derrotó su inocencia.

Como segundo planteamiento de error, el señor Montalvo Saavedra esbozó que el proceso de identificación de este caso fue totalmente sugestivo y no confiable, por lo que no debió ser admitido por el TPI. Esto, ya que alegó que la única persona que sugirió, dirigió y centró la investigación hacia el señor Montalvo Saavedra fue la agente Báez Ramos, quien no fue testigo ocular de los hechos. Particularizó que la agente Báez Ramos no tomó las medidas preventivas para no sugerir la identidad del sospechoso de los hechos a las testigos. Por otro lado, planteó que los agentes de la Policía de Puerto Rico no realizaron una rueda de confrontación, donde los testigos compararan la estatura, edad y la voz del actor de los hechos.

Por ello, puntualizó que la actuación de la agente Báez Ramos y la ausencia de una investigación independiente por parte del agente Vélez Malavé provocaban que el proceso de identificación estuviese falto de garantías confiables que llevaron a una identificación errada, irreparable y perjudicial, en violación a su debido proceso de ley. Asimismo, expuso que el actor de los hechos tenía una gorra negra en la cabeza y una mascarilla negra que cubría su nariz, boca y barbilla, por lo que la señora Rivera Casiano no se podía fijar en su apariencia facial. A su vez, señaló que vídeo se desprendió que la señora Rivera Casiano sacó el dinero de la caja y lo entregó sin observar al actor de los hechos con detenimiento. Por otra parte, el apelante argumentó que cuando la oficial Báez Ramos llegó al establecimiento, la señora Rivera Casiano no le describió las características físicas del sospechoso, excepto por su vestimenta y voz. Apuntó que del vídeo se pudo observar que el actor de los hechos tenía un abundante cabello, color negro, mientras que al momento de los hechos y del *mugshot* que se utilizó para identificarlo, el señor Montalvo Saavedra tenía poco cabello, color canoso. El apelante precisó que a pesar de que la señora Rivera Casiano desconocía su nombre, sí sabía quién era Pito Dora, razón por la cual identificó su fotografía.

Por su parte, la Oficina del Procurador General subrayó que las señoras Rivera Casiano y Comas Albino ofrecieron unas declaraciones precisas en que observaron que el apelante portaba la culata de un arma de fuego. Además, estableció que el agente Vélez Malavé afirmó que verificó en la División de Armas del Negociado de la Policía que el señor Montalvo Saavedra no tenía armas de fuego registradas a su nombre. Sobre el particular, la Oficina del Procurador General manifestó que el TPI realizó un ejercicio valorativo sobre la totalidad de la prueba, basado en el sentido común, la lógica y la experiencia. Asimismo, alegó que el hecho de

que en los testimonios hubiera contradicciones en torno a detalles de los hechos como la identificación del arma de fuego, no era razón para no darle credibilidad al testimonio de las señoras Rivera Casiano y Comas Albino en ausencia de indicios de perjuicio, parcialidad o error manifiesto.

Con respecto al planteamiento de una prueba de identificación viciada, la Oficina del Procurador General adujo que la señora Rivera Casiano tuvo al apelante de frente y lo identificó como un cliente del establecimiento que anteriormente tuvo la oportunidad de divisar sin la utilización de mascarilla. Concretó que la señora Rivera Casiano ejerció un alto grado de atención, ya que proveyó una descripción de la vestimenta del actor de los hechos y que el hecho de que la testigo lo haya observado por varios segundos no significa que no haya prestado atención. Además, planteó que la agente Báez Ramos reconoció al actor de los hechos como Pito Dora, por haber intervenido con él en varias ocasiones. A su vez, estableció que la agente Báez Ramos identificó en el vídeo de los hechos las mismas sortijas que, casualmente, el apelante utilizaba en la sala del TPI durante el juicio.

Como cuestión de umbral, nos corresponde evaluar las alegaciones de insuficiencia de la prueba.

Del testimonio de las señoras Rivera Casiano y Comas Albino, quienes eran empleadas de la pizzería *Little Ceasars* de San Germán, surgió que el 11 de noviembre de 2020, un cliente con gorra y mascarilla le demostró por dos (2) ocasiones la culata de un arma de fuego al levantarse su camisa para peticionar el dinero de la caja registradora del establecimiento. Mediante dicha acción, el cliente se apropió de $219.00 habidos en la caja registradora. La señora Rivera Casiano afirmó que en todo momento tuvo la oportunidad de observar al actor de los hechos y que, por su peculiar tono de voz, manera de caminar y forma de fruncir su rostro, identificó que se trataba de un

cliente que frecuentaba el establecimiento. Durante la rueda de fotografías realizada una semana posterior a los hechos, la señora Rivera Casiano identificó al señor Montalvo Saavedra como el sospechoso del robo. Dicho testimonio fue confirmado por la señora Comas Albino, quien identificó al apelante como el cliente que perpetró el robo en la pizzería. Asimismo, dichos testimonios se pueden confirmar con la apreciación de la grabación de los hechos. Por otro lado, cuando la agente Báez Ramos verificó la grabación de la pizzería, identificó al actor del robo como Pito Dora, apodo por el que se le conoce al apelante en el pueblo de San Germán. Tras identificar al señor Montalvo Saavedra como el sospechoso del delito, el agente Vélez Malavé testificó que acudió a la División de Armas del Negociado de la Policía de Puerto Rico, donde se le certificó que el apelante no tenía armas de fuego registradas.

Al ponderar sobre el delito de robo, según tipificado en el Artículo 189 del Código Penal, *supra*, sec. 5259, se presentó prueba suficiente para demostrar más allá de duda razonable que el señor Montalvo Saavedra se apropió ilegalmente de $219.00 de la caja registradora de la pizzería *Little Ceasars* de San Germán, sustrayéndolos de la inmediata presencia y en contra de la voluntad de la cajera del establecimiento, por medio de la intimidación al mostrar un arma de fuego.

Con respecto a la utilización del arma de fuego para intimidar, no erró el TPI al concluir que el Ministerio Público probó más allá de toda duda razonable que se configuró el delito de robo agravado, según se dispone en el Artículo 190 (e) del Código Penal, *supra*, sec. 5260, ya que se demostró que el apelante utilizó un arma de fuego en la comisión del delito. Al aquilatar la prueba presentada, el TPI le dio entera credibilidad a los testimonios de las testigos oculares, quienes aseguraron que el señor Montalvo Saavedra le demostró por dos (2) ocasiones la culata del arma de fuego a la señora Rivera Casiano. A

pesar de que las testigos desconocían si el apelante portaba un arma de fuego ficticia o real que fuese capaz de producir un tiro, afirmaron que el apelante portaba un arma de fuego para que la cajera le otorgara el dinero de la pizzería. Se presentó prueba suficiente y satisfactoria sobre que el señor Montalvo Saavedra se apropió $219.00 de la pizzería por medio de la intimidación, haciéndole creer razonablemente a la señora Rivera Casiano, que portaba un arma de fuego real que le podía infligir un daño de no acceder a otorgarle el dinero que peticionó. Del apelante no haber intimidado a la cajera al enseñarle el arma de fuego, no hubiese logrado su propósito de apropiarse del dinero de la pizzería.

Sin embargo, el Estado no presentó evidencia sobre todos los elementos del delito de portación, transportación o uso de armas de fuego sin licencia, a tenor con el Artículo 6.05 de la Ley de Armas, *supra*, sec. 466d. El elemento esencial del referido delito es la ausencia de una licencia de armas vigente, por lo que el Ministerio Público debe demostrar mediante prueba directa o circunstancial que la persona acusada carecía de licencia para portar un arma. Tras un análisis sosegado del expediente ante nuestra consideración, incluyendo la TPO de este caso, no surge que el Estado haya presentado prueba directa o circunstancial sobre el elemento de ausencia de licencia. A saber, no se presentó la evidencia directa de la certificación de licencia de armas expedida por el Negociado de la Policía de Puerto Rico ni se obtuvo la confesión corroborada del apelante u otra prueba suficiente a los fines de establecerse la ausencia de licencia de armas. A su vez, el Ministerio Público no mostró evidencia indirecta o circunstancia que nos lleve a concluir que el Estado cumplió con la carga probatoria para lograr la convicción del apelado por el delito tipificado en el Artículo 6.05 de la Ley de Armas, *supra*, sec. 466d, en el que se castiga el acto de portar, transformar y utilizar un arma sin tener una licencia vigente.

En este caso, el Estado se limitó a presentar el testimonio del agente Vélez Malavé, quien declaró que la División de Armas del Negociado de la Policía de Puerto Rico le notificó que el señor Montalvo Saavedra *no tenía armas de fuego registradas*. Sobre el particular, el esquema de licenciamiento de arma es distinto al de registrar un arma de fuego. Pues, el hecho de que el apelante carecía de la registración de un arma sin más no es suficiente para probar más allá de duda razonable la ausencia de una licencia para portar o poseer un arma. En tal virtud, erró el TPI al emitir un fallo condenatorio por el delito de portación, transportación o uso de armas de fuego sin licencia, Art. 6.05 de la Ley de Armas, *supra*, sec. 466d, sin que se haya presentado prueba suficiente para demostrar el elemento esencial de ausencia de licencia de armas.

Resuelto los asuntos sobre la insuficiencia de la prueba, nos corresponde atender el error de derecho planteado por el apelante. En tal virtud, el señor Montalvo Saavedra señaló que el proceso de identificación estuvo viciado. No obstante, tras un análisis minucioso de la totalidad de las circunstancias presente en el proceso de identificación y de los hechos particulares del caso, concluimos que no medió circunstancia alguna que haya violentado el debido proceso de ley del señor Montalvo Saavedra al identificarlo como el sospechoso del robo agravado en *Little Ceasars* de San Germán. Veamos. La rueda mediante fotografías se celebró alrededor de una semana posterior a que ocurrieran los hechos. El agente Vélez Malavé estableció que con las descripciones que la señora Rivera Casiano le otorgó del sospechoso y la información provista por la agente Báez Ramos, buscó el *mugshot* del señor Montalvo Saavedra y ocho (8) fotografías adicionales con características físicas similares. Relató que cuando la señora Rivera Casiano observó el muestrario de fotografías, rápidamente señaló que el señor Montalvo Saavedra era el sospechoso del robo.

Asimismo, los hechos de este caso demuestran que la identificación del sospechoso en este caso fue libre, espontánea y confiable. Véase *Pueblo v. Ramos Delgado, supra.* En primer lugar, la señora Rivera Casiano tuvo oportunidad de visualizar al actor de los hechos, ya que expresó que lo observó en todo momento desde que entró por la puerta del establecimiento. En segundo lugar, la testigo prestó gran atención a las características físicas del actor de los hechos durante el suceso, toda vez que identificó sus cualidades físicas, su atuendo, forma de caminar, tono de voz y manera de gesticular. Por ello, pudo identificar que el actor de los hechos tenía las mismas características del cliente que frecuentaba visitar la pizzería, previo a implementarse la medida del uso de mascarilla por la pandemia del COVID-19. En tercer lugar, las características y los detalles ofrecidos por la testigo guardaron fidelidad con lo observado y escuchado en la grabación de los hechos. En cuarto lugar, la señora Rivera Casiano mostró un alto nivel de certeza al identificar al señor Montalvo Saavedra como la persona sospechosa del delito. Al mismo tiempo, transcurrió un corto periodo de una semana desde que ocurrieron los hechos y se realizó la rueda de fotografías. Como si fuera poco, la rueda de fotografías no constituyó la única manera de identificar al sospechoso. Pues, al observar la grabación de los hechos, la agente Báez Ramos reconoció que el actor de los hechos fue el señor Pito Dora, ya que había intervenido previamente con él. Importante es que, a tenor con la prueba presentada y creída por el TPI, la señora Rivera Casiano afirmó que en su identificación de la fotografía no influyó la expresión de la agente Báez Ramos sobre que el sospechoso del robo era conocido como Pito Dora, ya que desconocía tanto el nombre como el apodo del apelante. Además, el hecho de que la señora Rivera Casiano observó al apelante por un periodo corto de tiempo no implicó que se vició la identificación del sospechoso por medio de la sugestividad de la agente Báez Ramos.

Ante la ausencia de pasión, prejuicio, parcialidad o error manifiesto, la apreciación de validez del método de identificación alcanzada por el juzgador de los hechos merece respeto, toda vez que estuvo en mejor posición que este foro apelativo al aquilatar la prueba presentada.

**IV.**

Por los fundamentos que anteceden, se confirma la Sentencia emitida por el TPI en cuanto al fallo condenatorio por el cargo por el delito de robo agravado, y se revoca en cuanto al cargo por el delito de portación de arma de fuego.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones