Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>RECURRIDO<br><br>v.<br><br>LUIS DANIEL ENCARNACIÓN COLÓN<br><br>PETICIONARIO | TA2025CE00804 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm. NSCR202300001<br><br>Sobre: A93/Grado de Asesinato 1re GDC Inciso A |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de marzo de 2026.

### I.

El 24 de noviembre de 2025, el señor Luis D. Encarnación Colón (peticionario o señor Encarnación Colón) presentó digitalmente una *Petición de Certiorari* en la que nos solicitó que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI o foro primario), el 9 de octubre de 2025, notificada y archivada en autos el 10 de octubre de 2025.[1] Mediante dicho dictamen, el TPI declaró No Ha Lugar la solicitud de supresión de identificación presentada por el peticionario.

Junto al recurso, presentó una *Moción para presentar disco de Vista de Supresión de Evidencia* en la que informó la presentación física, en la Secretaria del Tribunal de Apelaciones, de un disco compacto con el audio de la rueda de identificación por voz a la que

---

[1] Véase entrada núm. 8 del apéndice, de la entrada núm. 1 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).

hace referencia en el recurso.[2] También, mediante otra moción, informó la presentación física, en la Secretaría de este tribunal, de la transcripción de la prueba oral (tpo) de la prueba desfilada durante la vista de supresión de identificación.[3]

El 2 de diciembre de 2025, emitimos una *Resolución* en la que ordenamos el desglose de la tpo presentada de manera física para que la misma fuera presentada digitalmente en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).[4]

El 3 de diciembre de 2025, el peticionario presentó una *Moción en Cumplimiento de Orden del 2 de diciembre de 2025 y para presentar transcripción de la prueba oral desfilada durante la Vista de Supresión de Identificación* mediante la cual incluyó, digitalmente, la tpo desfilada durante la vista de supresión de identificación.[5]

El 4 de diciembre de 2025, emitimos una *Resolución* en la que le concedimos a la parte recurrida hasta el 10 de diciembre de 2025 para informar si estipulaba la tpo sometida.[6] En caso de no estipularla, le concedimos hasta la misma fecha para presentar sus objeciones a la misma.

El 5 de diciembre de 2025, el Pueblo de Puerto Rico, representado por la Oficina del Procurador General (parte recurrida), presentó una *Solicitud de remedio y extensión de término* en la que solicitó un término adicional de treinta (30) días para cumplir con nuestra orden y presentar sus objeciones, si alguna.[7]

El 8 de diciembre de 2025, emitimos una *Resolución* en la que le concedimos a la parte recurrida una prórroga final hasta el 8 de enero de 2026 para cumplir con lo ordenado con relación a la

---

[2] Íd., entrada núm. 2 del expediente digital del caso.
[3] Íd., entrada núm. 3.
[4] Íd., entrada núm. 4.
[5] Íd., entrada núm. 5.
[6] Íd., entrada núm. 6.
[7] Íd., entrada núm. 7.

estipulación, u objeciones, a la tpo.[8] Además, le concedimos al peticionario hasta el 9 de diciembre de 2025 para notificar el audio de la rueda de identificación por voz a la parte recurrida.

El 8 de enero de 2026, la parte recurrida presentó una *Moción para notificar objeciones a la transcripción de la prueba oral* en la que informó que presentó varias objeciones y que, una vez incorporadas las correcciones, estaría en posición de estipular la tpo.[9]

El 12 de enero de 2026, emitimos una *Resolución* en la que le concedimos al peticionario hasta el 22 de enero de 2026 para informar si estaba de acuerdo con las objeciones a la tpo.[10]

El 21 de enero de 2026, el peticionario presentó una *Moción informativa* en la que informó que no tenía ninguna objeción a las enmiendas propuestas por la parte recurrida.[11]

El 21 de enero de 2026, emitimos una *Resolución* en la que acogimos la tpo y le concedimos al peticionario hasta el 13 de febrero de 2026 para presentar su alegato suplementario y a la parte recurrida hasta el 6 de marzo de 2025 para presentar su alegato en oposición.

El 27 de enero de 2026, el peticionario presentó una *Moción en solicitud de que se acepte la Petición de Certiorari como alegato* en la que solicitó que tomemos la petición del recurso como alegato suplementario.[12]

El 6 de marzo de 2026, la parte recurrida presentó un *Escrito en Cumplimiento de Orden,* en el que solicitó que deneguemos la expedición del recurso o, en la alternativa, confirmemos la resolución recurrida.[13]

---

[8] Íd., entrada núm. 8.
[9] Íd., entrada núm. 11.
[10] Íd., entrada núm. 12.
[11] Íd., entrada núm. 13.
[12] Íd., entrada núm. 15.
[13] Íd., entrada núm. 17.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes para su atención.

**II.**

Según consta del expediente ante nuestra consideración, el caso de marras tuvo su génesis en hechos ocurridos el 2 de julio de 2022, cuando el señor Eric S. González Benítez (occiso o señor González Benítez) fue asesinado.[14] Como parte del proceso investigativo, el 20 de septiembre de 2022, la Policía llevó a cabo una rueda de identificación por voz.[15] En esta, participaron cinco (5) personas, incluyendo al peticionario, y cada una leyó en voz alta la frase que les fue provista como parte procedimiento para llevar a cabo la rueda.[16] Al final, se identificó al número uno como la voz reconocida, del que alegadamente perpetró el asesinato, por ser la misma escuchada el día de los hechos.[17]

La *Vista Preliminar* se celebró el 29 de diciembre de 2022 y, tras aquilatar la prueba desfilada, el foro primario determinó causa para acusar al señor Encarnación Colón por los artículos 93A del Código Penal de Puerto Rico, 33 LPRA sec. 5142, y los artículos 6.05 y 6.14A de la Ley de Armas de Puerto Rico de 2020, Ley Núm. 168-2019, 25 LPRA secs. 466d y 466m.[18] Consecuentemente, el Ministerio Público presentó acusaciones por todos los delitos imputados.[19] En esencia, al peticionario se le imputó dar muerte al señor González Benítez consistente en que "salió de un monte

---

[14] Íd., entrada núm. 4 del apéndice de la entrada núm. 1 del expediente digital del caso, *Acusaciones*.

[15] Íd., anejo de la entrada núm. 2 del expediente del caso, *Regrabación de la Rueda de Identificación*, presentada mediante disco compacto físicamente en la Secretaría del Tribunal de Apelaciones.

[16] Íd., anejo de la entrada núm. 2 del expediente del caso, video de las instrucciones del procedimiento a los participantes y audio de la rueda de identificación.

[17] Íd., anejo de la entrada núm. 2 del expediente del caso, minuto 1:25 en el audio.

[18] Íd., entrada núm. 3 del apéndice, de la entrada núm. 1 del expediente digital del caso.

[19] Íd., entrada núm. 4 del apéndice.

aledaño al patio de la parte posterior de la residencia del perjudicado y le manifestó a este: "Qué pasó cabrón", a la vez que levantó su mano derecha en donde sostenía un arma de fuego color gris opaco efectuándole varios disparos cayendo al piso y en donde allí con otra persona, que salió del mismo monte que el primero, le efectuaron varios disparos adicionales."[20]

El 31 de julio de 2023, el peticionario presentó una *Moción de Supresión de Identificación.*[21] En resumen, alegó que, la señora Jennifer Suarez Osorio, testigo que identificó al señor Encarnación Colón como autor de los hechos imputados, hizo una descripción limitada el día en que ocurrieron los hechos y, que fue en la segunda entrevista cuando indicó que podía reconocer la voz del presunto perpetrador. Además, aludió que, fue en la tercera entrevista, cuando se le mostró un documento con una foto del acusado, que la testigo señaló un posible perpetrador.

Argumentó que, la identificación se produjo bajo factores y circunstancias que imposibilitan que la misma sea confiable. Adujo que, la exposición de voz que la testigo alegó que escuchó fue probada como insuficiente para establecer, con algún grado de confiabilidad, la identificación del peticionario. Según argumentó, la testigo escuchó la voz por un periodo de entre tres (3) a cinco (5) segundos, en una situación de peligro inminente que le produjo pánico. Además, arguyó que, según la prueba desfilada durante la vista preliminar, la testigo escuchó, en una ocasión anterior, una conversación entre el acusado y el occiso, pero no demostró el contexto de esa situación, cuándo fue dicho intercambio, a qué distancia se encontraba la testigo y qué palabras específicas escuchó.

---

[20] Íd.

[21] Íd., entrada núm. 5 del apéndice de la entrada núm. 1 del expediente digital del caso.

Así las cosas, el peticionario sostuvo que, la habilidad de la testigo para haber escuchado la voz o tener memoria de la misma quedó impugnada. Manifestó que ésta no pudo dar descripción de los presuntos perpetradores más allá de la estatura y tipo corporal. También, argumentó sobre la fecha en que se llevó a cabo la rueda de identificación y arguyó que constituye un factor importante para concluir la ausencia de confiabilidad dado que ocurrió a ochenta (80) días de los hechos por los que se le acusa.

Por lo cual, alegó que el proceso de la identificación por voz estuvo objetivamente plagado de errores. En particular, expuso que, al peticionario no le notificó de su derecho a estar asistido por un abogado, en esa etapa de los procedimientos; además, no se le requirió a la testigo ningún tipo de descripción de la voz del alegado perpetrador previo a la rueda; la frase utilizada era de cinco (5) palabras, de las cuales cuatro (4) son idénticas a las utilizadas el día de los hechos, contrario a los criterios jurisprudenciales; y que se perpetuó lo mínimo del procedimiento llevado a cabo. Así las cosas, adujo que el proceso fue contrario a los criterios establecidos en **_Pueblo v. Hernández González_**, 175 DPR 274 (2009).

Por su parte, el 18 de agosto de 2023, el Ministerio Público presentó una _Moción en Oposición a "Moción de supresión de identificación"._[22] Arguyó que, los argumentos de la defensa no van dirigidos a cuestionar la admisibilidad de la identificación hecha por la testigo sino a impugnar la credibilidad y valor probatorio que en su día le otorgue el juzgador a su testimonio. Argumentó que, si el testimonio carece de credibilidad no es fundamento para solicitar la supresión de la identificación hecha por la testigo. Además, los contactos previos entre la testigo y el acusado para que esta pudiera

---

[22] Íd., entrada núm. 6.

identificar la voz en la rueda de identificación es una cuestión de hechos a adjudicarse en un juicio.

Por su parte, alegó que sí se le solicitó a la testigo una descripción de la voz del presunto asesino y que con dicha descripción la Policía eligió los componentes de la rueda de identificación con un tono de voz similar. También, arguyó que, la frase utilizada cumplió con los parámetros establecidos jurisprudencialmente y que las voces de los componentes de la rueda fueron grabados en su totalidad. Por último, adujo que el planteamiento de sugestividad es uno totalmente especulativo.

El 9 de octubre de 2025, notificada el 10 de octubre de 2025, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la solicitud de supresión de identificación.[23] El foro primario celebró una vista de supresión de identificación los días: 10 de septiembre de 2024, 8 de noviembre de 2024, 2 de enero de 2025, 14 de febrero de 2025, 27 de marzo de 2025, 5 de junio de 2025, 31 de julio de 2025 y 29 de septiembre de 2025. En esta, testificaron los siguientes: Agte. Steven Lazú Vázquez, Agte. Luis Ríos Camacho, Agte. Luz Sánchez Torres y la señora Jennifer Sánchez Osorio. El TPI consideró como piezas admitidas en evidencia: fotografías del lugar donde se alegó ocurrieron los hechos; un documento preparado por la Policía de Puerto Rico conocido como 360 con información del acusado; el acta sobre la rueda de confrontación; y el audio y videos de la rueda de identificación por voz celebrada el 20 de septiembre de 2022.

El foro primario hizo un resumen de lo declarado por los testigos, sobre los hechos imputados y el proceso de la rueda de identificación por voz. Concluyó, a la luz de la totalidad de las circunstancias, que no hubo sugestividad en el proceso ni

---

[23] Íd., entrada núm. 8.

incumplimientos con los criterios establecidos en **Pueblo v. Hernández González**, supra. En particular, señaló que la testigo, a cuatro (4) días de los hechos, le indicó a la policía de su creencia de que el acusado era el autor de los hechos. Ello, aun cuando no podía identificarlo por su nombre porque solo conocía su apodo, pero ya lo había visto y escuchado previamente. Asimismo, concluyó que, la fotografía que se le mostró a la testigo, que corresponde al acusado, no hizo sugestivo el proceso, sino que enlazó a la persona por la cual ésta conocía por su apodo. Por último, en cuanto al proceso de la rueda de confrontación, el TPI resolvió que aun cuando la testigo no brindó descripción sobre la voz, brindó el apodo de la persona que entendía que había cometido los hechos y manifestó que lo podía identificar por voz porque lo había escuchado previamente.

Oportunamente, el 27 de octubre de 2025, el peticionario presentó una *Moción en solicitud de reconsideración de supresión de identificación por voz* en la que reiteró sus argumentos sobre que el Estado incumplió con seguir las normas establecidas para la rueda de identificación por voz.[24]

Ese mismo día, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la moción de reconsideración.[25]

Insatisfecho, el peticionario presentó el recurso de *certiorari* de epígrafe, en el que formuló el siguiente señalamiento de error:

> **ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO SUPRIMIR LA IDENTIFICACIÓN REALIZADA POR MEDIO DE UNA RUEDA DE VOCES EN CONTRAVENCIÓN DEL DEBIDO PROCESO DE LEY.**

Argumentó que el Estado falló en seguir las normas establecidas en el estado de derecho vigente para llevar a cabo una rueda de identificación por voz. Adujo que la testigo no brindó descripción alguna de las voces de los perpetradores, solo que uno

---

[24] Íd., entrada núm. 9.
[25] Íd., entrada núm. 10.

de los atacantes tenía una voz ronca y la descripción física de un tal "gordo". Arguyó que el estado de derecho vigente requiere que la testigo brindara una descripción de las características de la voz previo a que se celebrara la rueda de identificación por voz. Asimismo, aludió a que el Estado utilizó la misma frase que la testigo alegó escuchar, alternando solo una palabra, por lo que soslayó los requisitos establecidos para que dicho proceso cumpliera con el debido proceso de ley. También, sostuvo que la identificación carece de confiabilidad por la intervención sugestiva de los agentes de la Policía con la testigo y porque, sin una justificación valida, tardaron casi tres meses, de ocurridos los hechos, para llevar a cabo la rueda de identificación. Por último, mencionó que el Estado no presentó prueba de que se le advirtió al peticionario su derecho a estar asistido por abogado durante la rueda. Por todo lo anterior, expresó que la rueda de identificación carece de confiabilidad y solicitó su supresión.

Por su parte, el 6 de marzo de 2026, la parte recurrida presentó su oposición. En resumen, alegó que la testigo sí describió la voz del acusado y explicó en detalle la razón por la cual podía reconocerla. Además, adujo que dicha descripción se utilizó para seleccionar los participantes de la rueda pues se intentó buscar voces gruesas. Asimismo, arguyó que la teoría del peticionario carece de una explicación sobre cómo una foto, la cual constituye un elemento visual, pudo haber tenido un efecto sugestivo sobre una identificación por voz, la cual envuelve exclusivamente un elemento auditivo. Respecto a la fecha en que se llevó a cabo la rueda de identificación por voz, manifestó que la testigo reconoció la misma antes de haberla identificado en dicha rueda, por lo que el paso del tiempo no demuestra que el proceso no fuese confiable. Además, sostuvo que, todos los participantes manifestaron la misma frase y en análisis del tribunal se rige a la luz de la totalidad de las

circunstancias. Por último, argumentó que, a la fecha de la rueda de identificación por voz, no se habían presentado las acusaciones en contra del peticionario por lo que no se activa el derecho a abogado durante el procedimiento.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Es en esencia un recurso extraordinario por el cual se solicita a un tribunal de mayor jerarquía la corrección de un error cometido por el tribunal inferior. *supra*, pág. 729. Una característica distintiva del auto de *certiorari* es que se asienta en la discreción delegada al tribunal revisor para autorizar su expedición y adjudicación. ***IG Builders et al. v. BBVAPR***, 185 DPR 307, 338 (2012). No obstante, nuestra discreción debe ejercerse de manera razonable, y siempre procurar lograr una solución justa. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 98 (2008).

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, ***In re Aprob. Enmdas. Reglamento TA***, 2025 TSPR 141, pág. 63, 216 DPR __ (2025), establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[26]

---

[26] Esta Regla dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción "es el más poderoso instrumento reservado a los jueces". *Rodríguez v. Pérez*, 161 DPR 637, 651 (2004); *Banco Metropolitano v. Berríos*, 110 DPR 721, 725 (1981). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *García López y otro v. E.L.A.*, 185 DPR 371 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Citibank et al. v. ACBI et al.*, *supra*; *Medina Nazario v. McNeil Healthcare LLC*, *supra*, pág. 729. Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". *Hietel v. PRTC*, 182 DPR 451, 459 (2011); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001); *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997). Ello, ciertamente, constituiría un abuso de discreción.

En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". *Citibank et al. v. ACBI et al.*, *supra*, pág. 735. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó

---

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". *Citibank et al. v. ACBI et al.*, *supra*, pág. 736. Véase, además, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

**B.**

En nuestro ordenamiento jurídico criminal, no puede haber una convicción sin prueba que conecte o señale a un imputado de delito, más allá de duda razonable, como el responsable de los hechos que se le imputa. *Pueblo v. Rodríguez Maysonet*, 119 DPR 302, 309 (1987). Por ello, la identificación del acusado es una de las etapas más esenciales o críticas del procedimiento criminal. Íd.; *Pueblo v. Gómez Incera*, 97 DPR 249, 252 (1969). La falta de una identificación confiable constituye una violación al debido proceso de ley del acusado. *Pueblo v. Hernández González*, supra, pág. 286.

El Estado tiene a su disposición varios mecanismos para identificar a los sospechosos relacionados con el delito investigado, entre estos: la identificación mediante rueda de detenidos, fotografías y huellas dactilares, aunque existen métodos alternos de identificación como las muestras de sangre y la voz. *Pueblo v. Ramos y Álvarez*, 122 DPR 287, 310 (1988).

"[U]na rueda de identificación de voces debe ser la excepción y celebrarse tan sólo en circunstancias extraordinarias en las que el testigo verdaderamente lo necesite o cuando no haya otro modo de identificación." *Pueblo v. Hernández González*, supra, pág. 308. En *Pueblo v. Hernández González*, supra, el Tribunal Supremo pautó las exigencias a llevarse a cabo previo a celebrarse la rueda de identificación por voz. Al realizarse una rueda de identificación por voz, se deberá cumplir con lo siguiente: (i) debe procurarse una descripción previa de la voz que escuchó el testigo, de manera que

las voces que se escojan para la rueda tengan características similares; (ii) deben participar en ésta al menos cinco personas, incluyendo al acusado o sospechoso; (iii) los testigos no pueden ver a los componentes de la rueda, y si hay más de un testigo, no pueden comunicarse entre ellos; (iv) deben grabarse las voces de los componentes de la rueda para perpetuarlas, de manera que el tribunal revisor pueda considerar si hubo algún factor sugestivo; (v) debe evitarse el uso de las palabras o de los sonidos que fueron emitidos durante el crimen; y (vi) en la medida de lo posible y si surge de los hechos delictivos, debe reproducirse en la rueda cualquier acción, o utilizarse cualquier pieza de ropa o aparato que pueda alterar la voz de los participantes de manera que las voces se aproximen a la escuchada durante los hechos. Íd., págs. 308-309.

El acusado puede solicitar la supresión de una identificación fundamentada en la sugestividad del proceso, en su falta de confiabilidad o en ambas cosas. *Pueblo v. Toro Martínez,* 200 DPR 834, 863 (2018). Ahora bien, la supresión requiere un análisis caso a caso de la identificación que permita sopesar la totalidad de las circunstancias que la rodean. Íd.; *Pueblo v. Mejías Ortiz*, 160 DPR 93, 93 (2003).

Para evaluar la confiabilidad de una identificación y, por ende, la admisibilidad de la misma, se deberán examinar los siguientes criterios: 1) oportunidad del testigo de observar al acusado en el momento en que ocurre el acto delictivo; 2) grado de atención del testigo; 3) corrección en la descripción; 4) nivel de certeza en la descripción en la identificación y; 5) el tiempo transcurrido entre el crimen y la confrontación. *Pueblo v. Hernández González*, supra, págs. 291-292 ; *Pueblo v. Mejías Ortiz, supra.*

**IV.**

En el presente caso, el peticionario nos solicita que revoquemos la determinación del foro primario que rechazó suprimir la identificación por voz que lo identificó como el autor de los hechos por los cuales se le acusa. Este sostiene que la rueda de identificación por voz no cumplió con los requisitos establecidos jurisprudencialmente. Particularmente, con lo resuelto en ***Pueblo v. Hernández González***, supra. Por lo cual, arguye que el foro primario erró al no suprimir dicha identificación, en contravención al debido proceso de ley.

Por su parte, la parte recurrida argumenta que se cumplió con el debido proceso de ley y no debemos intervenir con la discreción del TPI.

Tras un análisis objetivo, sereno y cuidadoso del expediente y de la tpo estipulada, y a la luz de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que debemos abstenernos de ejercer nuestra función revisora discrecional y rechazar intervenir con la determinación del TPI. La determinación recurrida no arroja error alguno que amerite nuestra intervención, en esta etapa de los procedimientos. Tampoco surge de los autos que el TPI haya incurrido en error, prejuicio, parcialidad o que haya abusado de su discreción. Por lo cual, denegamos intervenir. En estos momentos, no estamos prejuzgando las controversias presentadas, en esta etapa de los procedimientos, por lo que el Tribunal de Primera Instancia puede continuar con el proceso, sin que tenga que esperar por nuestro mandato.

**V.**

Por los fundamentos pormenorizados, se deniega la expedición del auto de *certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones